## MOUNGER ET AL. *v.* GANDY ET AL.

### [69 South. 817.]

1. HOMESTEAD. *Claims of exemption. Residence. Laws. Construction. Mortgages. Capacity of mortgagor parties. Insanity. Paranoia.*

Where a wife under a decree of divorce and alimony acquired a tract of land belonging to her husband, which land was never under cultivation and on which there was never a house of any sort, except a cotton house which had not been occupied as a residence, she could not assert her claim as for a homestead in such land against the purchaser under a foreclosure of a prior trust deed, made by her husband to secure the payment of attorney fees.

2. HOMESTEAD. *Laws. Construction.*

Homestead laws are liberally construed in favor of the exemptionist, but never as a pretext to claim that which does not really and substantially exist.

3. MORTGAGES. *Capacity of mortgagor. Insanity.*

The fact that one executing a deed of trust is afflicted with paranoia, which manifests itself in delusions that do not affect his ability to carry on his business, does not invalidate such deed of trust given by him, and the fact that he has been acquitted of crime on such ground in nowise estops or concludes a party claiming title through him.

4. WORDS AND PHRASES. *Capacity of parties. "Paranoia."*

"Paranoia" is a form of mental distress known as delusionary insanity, and a person affected with it has delusions which dominate, but do not destroy, the mental capacity, and though sane as to other subjects, as to the delusion and its direct consequences the person is insane.

APPEAL from the chancery court of Covington county. HON. R. E. SHEEBY, Chancellor.

Suit by M. U. Mounger and John A. Yeager against W. W. Gandy and others. From a judgment for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*M. U. Mounger* and *R. H. & J. H. Thompson,* for appellants.

*McIntosh Bros.,* for appellees.

Stevens, J., delivered the opinion of the court.

Appellants, as complainants in the court below, instituted this suit in the chancery court of Covington county to quiet their title to the lands described as the north-east quarter of the north-east quarter of section thirteen, township seven north, range fifteen west, and the south-west quarter of the north-west quarter of section eighteen, township seven north, range fourteen west, in said Covington county, and to cancel as a cloud the claim of the defendants. Complainants deraigned title through foreclosure by the trustee of a deed of trust given by the defendant W. W. Gandy to secure an attorney's fee of seven hundred and fifty dollars contracted with and owing complainants as the attorneys for the defense of W. W. Gandy, at that time charged with the murder of one Rutland. After W. W. Gandy was arrested, and while incarcerated, he employed the complainants to defend him, and in order to secure the fee he executed a deed of trust on the eighty acres of land involved in this suit to one Lott, as trustee. This deed of trust was foreclosed, and the land purchased by complainants, who deraigned title from the United States government by mesne conveyances to W. W. Gandy and from Gandy to themselves through said foreclosure. It appears that on the trial of the murder case appellants, as attorneys for W. W. Gandy, interposed the defense that at the time of the homicide the defendant was partially insane, being afflicted with what is known as "paranoia." The jury, on the trial of the criminal charge, found that the defendant was insane at the time of the homicide, and so certified by their verdict, and upon this verdict or finding of the jury W. W. Gandy was committed to the insane hospital.

for treatment, and was so confined at the time of the institution of this chancery suit. A guardian was appointed for his estate, and, in response to the bill in this case, filed waiver of service, joined issue in short with all the allegations of the bill, and adopted the allegations contained in the separate answer of his codefendant, Carrie Lee Gandy. It further appears that Carrie Lee Gandy was a minor, and defended by W. C. Davis, her guardian *ad litem.* She admits the execution of the deed of trust, but denies that complainants are the owners of the land in question and that her claim thereto is a cloud upon any title of complainants. It is further claimed in her answer that W. W. Gandy was insane at the time of the execution of the trust deed, and thereby incapable of making said conveyance, and, furthermore, this defendant claimed the lands in question as the exempt homestead. The answer further charges that this defendant filed a bill for divorce against her husband, W. W. Gandy, and secured a decree of divorce, and also awarding her alimony in the sum of three hundred and ten dollars, and a lien upon the lands in question to pay and satisfy her claim for alimony; that in pursuance of this decree R. Norwood, commissioner, duly advertised and sold the lands in question, and at the commissioner's sale the defendant Carrie Lee Gandy purchased the lands and received therefor a commissioner's deed, and by virtue of said deed she claims a title thereto. Considerable testimony was taken for both parties, and the cause thereafter heard by the chancellor on bill, answer, and depositions. The chancellor dismissed the bill, and from his decree appellants appeal.

The testimony shows that one Augustus Gandy, father of 'the defendant W. W. Gandy, owned lands adjoining the lands in controversy, lying to the east of the forty acre tract in section eighteen and to the north and east of that portion of the land in controversy lying in section thirteen. In 1909 W. W. Gandy, then a member of his father's household, married a girl of tender years,

his codefendant herein, and thereafter he and his child wife lived as a member of Augustus Gandy's household, and in the same house and on the lands owned and occupied by the father as a homestead. They were living as members of this household at the time W. W. Gandy committed the homicide, and at the time of the execution by W. W. Gandy of the deed of trust in question. Carrie Gandy did not join in the execution and delivery of this trust deed. It seems that the lands involved in this suit were acquired by W. W. Gandy before his marriage, and that these lands were wild and uncultivated, and not inclosed, when the trust deed was given, with the possible exception of two or three acres on the northern line of the south-west quarter of the north-west quarter of section eighteen where it is contended by attorneys for the defense, supported by the evidence of the defendants, that the fence inclosing the farm of Augustus Gandy came down across the line from the north and took in several acres of this particular forty title to which was in W. W. Gandy. It was contended by witnesses for the complainants that the fence did not cross the line at that point, and that there was no land belonging to W. W. Gandy under fence or in cultivation in the year 1910 when the trust deed was executed. All the land under fence was claimed by Augustus Gandy, and controlled and cultivated by him or his tenants. There were no improvements on the eighty acres of land covered by the trust deed with this exception: At a time long prior to the execution of the trust deed, W. W. Gandy was cultivating, in connection with others, a field owned by his father along the northern border of the south-west quarter of the north-west quarter of section eighteen and in the farming operations on his father's land he built a cotton house on the northern border of his own land, and it seems that he intended to place this house upon his own land. This cotton house was used all the while in connection with the farm of Augustus Gandy. It further appears that a line drawn one hundred feet south of the

northern line of the forty acre tract in question would
fall south of this cotton house, and south of the entire
field connected with the elder Gandy's farm, and that the
whole of W. W. Gandy's forty acre tract south of that
line was wild, uncultivated, and unoccupied.    There is
some evidence to the effect that, several years before,
several acres had been cleared on the upper forty in sec-
tion thirteen and planted in a few melons and peas, but
that this little patch had been abandoned several years
before the trust deed was given, and the fence burned
down.

A careful examination of the entire record convinces
us that the decree of the chancellor is manifestly wrong.
Upon the claim of exemption the proof shows conclu-
sively that W. W. Gandy and his wife resided with
the husband's parents and as members of the elder
Gandy's family. W. W. Gandy never owned any dwelling
house of any kind. He had no farm of his own upon
the lands in controversy. ' There were no out houses
incident to the usual homestead situated on the lands.
The little cotton house, it is true, may be upon the south
forty; but this cotton house, though purposely located
on W. W. Gandy's land, would not characterize the lands
as a homestead. There is no pretense that appellees ever
lived in the cotton house, or pretended to do so. Even
though the father's field extended one hundred feet
across the line and onto the south forty claimed by the
son, yet this was the occupancy of the father and a part
of his field. The testimony of W. W. Gandy himself is
clear, forceful, and convincing. He testifies that the
lands in question never constituted his homestead, and
that when he executed the trust deed he so represented
to appellants. The testimony of the young wife shows
that she never claimed the land as a homestead before
the trust deed was executed. Pressed on this point, she
says:

"I just claimed it as Widney's land; that is all I know
about it."

The year the trust deed was given W. W. Gandy was cropping on the lands of his father. His own language is:

"My crop was right around the house mostly; around the house forty."

He states further: .

"As one of the children I lived there in the house with him (the father). I never had left the house."

The proof fails to show that W. W. Gandy ever established a homestead on either of the forty acre tracts. His residence during his entire married life was upon the father's lands, and at the date of the trust deed he and his wife were residing under the parental roof.

Homestead laws are liberally construed in favor of the exemptionist, but never as a pretext to claim that which does not really and substantially exist. All the many liberal opinions of the court on this subject are vitalized by the principle, well expressed by TARBELL, J., in *Campbell* v. *Adair,* 45 Miss. 170, in the following language:

"One of the leading objects of these statutes is to create, preserve, and protect a home for the family, for the wife, mother, and children, as well as for the husband and father. A characteristic feature of home is a place of residence, of which occupancy is an essential element. As a general rule, to constitute a homestead there must be actual occupation and use of the premises as a home for the family. The premises must be appropriated, dedicated, or used for the purpose designated by the law, to wit, as a home, a place to abide and reside on, 'a home for the family.' "

The alleged incapacity of W. W. Gandy to execute a valid deed of trust has not been shown or established by the proof. The verdict of the jury in the criminal case in no wise estops or concludes appellants. The issue and parties in that case were entirely different. It appears that Mr. Gandy suffered from what is commonly known as "paranoia," which is "a form of mental distress

known as 'delusional insanity,' and a person afflicted
with such mental disease has a delusion or delusions
which dominate, but do not destroy, the mental capacity,
and, though sane as to other subjects, on that of the de-
lusion and its direct consequences the person is insane."
Words and Phrases, vol. 6, p. 5166, and authorities cited.
Whatever the particular form of insanity or delusions
under which Mr. Gandy labored, the undisputed proof
shows that he at all times attended to his own business,
that he freely contracted, traded, and executed for him-
self deeds of conveyance whenever necessary or proper.
His deposition was taken on behalf of complainants in
this case, and his utterances therein are well expressed,
clear, and forceful. However much appellants might
be subjected to ancient joking about pleading the in-
sanity of their client in the murder charge, their rights as
litigants in this case should not and cannot thereby be
affected.

If the trust deed executed by Mr. Gandy was valid
without the joiner of his wife, it follows that the title ac-
quired by appellants through the foreclosure thereof is
also valid, and that they are entitled to the relief prayed
for in their original bill. We are of the opinion that the
decree of the court below should be set aside, and decree
entered here cancelling the claim of appellees, and con-
firming appellants' title.

Reversed and decree here for appellants.

*Reversed.*