## TANNER *v.* TANNER ET AL.

[71 South. 749.]

1. HOMSTEAD. *Necessity of occupancy as homestead. Amount and value. Right to choose. Exemptions. Character of estate. Use of land. Evidence. Sufficiency.*

The test as to whether or not land is a homestead is its use for homestead purposes, the law does not exempt to every head of a family who lives in the country one hundred and sixty acres of land worth not more than three thousand dollars but only land actually occupied as a homestead.

2. HOMESTEAD. *Right to choose.*

The head of the household has the right to choose the homestead, and ownership in fee simple of the homestead is not essential.

3. HOMESTEAD.  *Use of land.  Evidence.  Sufficiency.*

Where the evidence showed that a householder occupied one tract of land and occasionally got wood off of a forty-acre tract of wild unfenced land about three quarters of a mile distant for household purposes, it was insufficient to show use of the forty-acre tract as a homestead.

APPEAL from the chancery court of Montgomery county.

HON. D. M. KIMBROUGH, Chancellor.

Suit by Mrs. Mary J. Tanner and others against S. L. Tanner. From a decree for petitioners, defendan appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Brown, Chambers & Cooper,* for appellant.

Since the filing of the brief for appellant in this cause this court has decided the case of *Mounger* v. *Gandy,* 69 So. 817, found in the advance sheets of November 27, 1915.

This case and the principle announced is practically decisive of the case at bar. In the case at bar there had never been any residence on the forty-acre woodland tract. It was situated three-quarters of a mile from the tract which was the homestead fourteen or fifteen years before. The residence of the grantor was on the land of his daughter and was never on the forty acres in question.

We can do no better than quote from the opinion of Judge Stavens in the Mounger case: "Homestead laws are liberally construed in favor of the exemptionist, but never as a pretext to claim that which does not really and substantially exist. All the many liberal opinions of the court on this subject are vitalized by the principle, well expressed by Tarbell, J., in *Campbell* v. *Adair,* 45 Miss. 170, in the following language:

"'One of the leading objects of these statutes is to create, preserve, and protect a home for the family, for

the wife, mother and children, as well as for the husband and father. A characteristic feature of home is a place of residence of which occupancy is an essential element. As a general rule, to constitute a homestead there must be appropriated, dedicated or used for the purpose designated by the law, to wit, as a home, a place to abide and reside on, a home for the family.' "

*W. R. S. Wilburn,* for appellees.

It is the policy of the laws of Mississippi, as stated by counsel, to encourage home buildings, and this policy is continually being broadened. Exemption laws are to be liberally construed, as stated by Judge Mayes in the case of *Zukoski* v. *McIntire,* 93 Miss. 811.

Courts will not be on the alert to defeat the assertion of those rights. Whenever there is a serious doubt as to whether or not property is, or is not a homestead, the doubt should be solved in favor of the exemptionists, sustaining, instead of defeating the estate which is created by a sound legal policy.

The record in this case shows that the forty-acre tract was used by J. T. Tanner off of which to get fire wood. See the testimony of G. R. Joiner, page 34; and as also shown by the testimony of R. B. Powers, on page 43, and at page 44, near the end of the page. This court has been very jealous in upholding the rights of an exemptionist, and in construing all things in favor of the exemptionist, as is clearly shown by the case hereinbefore referred to, and is also shown by the case of *King* v. *Struges,* 56 Miss. 606, or *Graft* v. *St. Clair,* 55 Miss. 89, which are quoted by counsel.

The homestead does not have to be in one body; detached parcels of land can and do constitute a homestead, 56 Miss. 30, and 65 Miss. 439, 73 Miss. 382.

In the 46th New Hampshire, page 43 it was held that a small piece of land off of which hay was cut for a cow, kept at the home where a man lives, may be re-

.garded as a part of his homestead, though the land is separate from the house and a mile distant.

In the 93 Texas, 279, the court held that a lot in a town, one-half a mile distant from the residence upon which vegetables were grown for the use of the family, was held as exempt. In the 67th North Carolina, 293, the court held that two tracts of land three miles distant from each other were a part of the homestead and exempt.

In the case of *Bothell* v. *Street,* 6 Atlantic Reporter, 646, the facts show that a mortgage was given on a woods lot. The court held the mortgage void, and that the woods lot was a part of the homestead, although .separate.

The case in 62nd Missouri (I read this case in the State Library and failed to make a notation of the page) is strongly in point. In this case the court says: "Under the statute homestead is defined as a dwelling house and appurtenances and the land used in connection therewith. But continuity does not seem to enter into our statutory definition. It frequently happens that . . . a farm is dependent upon a piece of woodland several miles distant, and both may constitute a homestead.

I deem it idle to cite further cases setting forth the doctrine that the homestead right of exemption is to be liberally construed, or that detached parcels of land may constitute a homestead.

POTTER, J., delivered the opinion of the court.

This was a suit filed in the chancery court of Montgomery county by Mrs. Mary J. Tanner, Mrs. Hessie Bailey, and Mrs. Evaline Hawkins against S. L. Tanner, all the parties to the suit, both complainants and defendants, being the heirs at law of J. T. Tanner, deceased. The bill of complaint alleged that complain-ants were the owners and tenants in common of one

hundred and sixty acres of land in Montgomery county, and described the lands. The bill alleged that Mrs. Mary J. Tanner owned an undivided one-fourth interest in the property described, Mrs. Evalina Hawkins an undivided one-fourth interest, and Mrs. Hessie Bailey an undivided one-fourth interest in said lands, and the defendant a like interest, and that the lands described comprised the homestead of J. T. Tanner, the husband of Mrs. Mary J. Tanner and the father of the other complainants' and defendant; that J. T. Tanner died intestate on the 9th day of January, 1911, leaving the lands described in the bill of complaint as his only real property; and that it was the desire of the widow, Mrs. Mary J. Tanner, that the said lands be partitioned. The bill then averred that on the 3d day of May, 1902, J. T. Tanner attempted to convey, and did execute, a deed, in consideration of one dollar and love and affection, to the defendant, S. L. Tanner, to the land described in the bill of complaint as the northeast quarter of the northeast quarter, section 1, township 17, range 7 east, and that Mrs. Mary J. Tanner, the wife of J. T. Tanner, deceased, did not join in said conveyance to the defendant, and that she did not know the deed to said lands had been made until after the death of her husband, J. T. Tanner. The bill alleged that at all times subsequent to the making of the deed in question until the death of J. T. Tanner the land above described had been used as a part of the homestead tract, and that the deed in question was void because Mrs. Mary J. Tanner, the wife of J. T. Tanner, did not join in the execution of said deed. And there was prayer for cancellation of the deed in question and for sale for partition of the entire one hundred and sixty acres of land, payment of attorneys' fees and costs, and distribution of net proceeds.

As to one hundred and twenty acres of the land described in the bill of complaint, S. L. Tanner, the defendant, in his answer admitted that the complainants

in said bill and himself were the owners and tenants in common of said lands, but denied that the complainants were the tenants in common with him in the forty-acre tract described in the bill of complaint as the northeast quarter of the northeast quarter of section 1, township 17, range 7 east, and denied that this forty-acre tract comprised any part of the homestead of J. T. Tanner, his father, during the lifetime of the said J. T. Tanner, and denied that the deed to him was void because of the failure of Mrs. Tanner to join in same, and set out that he was the sole and only owner of the forty acres deeded to him by J. T. Tanner. The proof in this case shows that J. T. Tanner in his lifetime owned one hundred and sixty acres of land, the land described in the bill of complaint; that he owned one hundred and twenty acres of this land at the time of his death, but had deeded forty acres of same on the 3d day of May, 1902, to J. T. Tanner, but that Mrs. Tanner, the wife of J. T. Tanner, did not join in this conveyance. The proof also establishes that the one hundred and twenty-acre tract of land and the forty-acre tract in controversy are three-quarters of a mile apart, counting the distance from the nearest points. There was a dwelling house on the one hundred and twenty-acre tract, but this dwelling house was not in use as a homestead by J. T. Tanner at the time the deed in question was made, but J. T. Tanner and his family lived in the dwelling house belonging to his daughter, on a tract of forty acres adjoining the one hundred and twenty acres owned by him, and that the forty acres owned by his daughter, and upon which his family lived with him, was used by all the parties as a pasture, and that, in addition to this, Mr. Tanner, for many years previous to his death and at the time of the execution of the deed in question, cultivated a thirty-nine acre tract of land adjoining the one hundred and twenty acres owned by him and the forty acres upon which he lived, and belonging to his daughter, under an

111 Miss.—30

agreement with C. R. Joiner, the owner of the thirty-nine acres, that if Tanner would pay the taxes he could cultivate this tract of land and have the profits. The proof further establishes that none of the forty acres conveyed in the deed were cleared and cultivated, and it was all woodland, and there was no testimony of any use of the forty acres in question for homestead purposes except that occasionally J. T. Tanner obtained wood for fuel therefrom. The chancellor held that the forty acres in question were used as a homestead, and that the conveyance to S. L. Tanner was void because Mrs. Tanner did not join in the deed, and from this decree S. L. Tanner appeals. In the case of *Mounger* v. *Gandy,* 69 So. 817, this court held that:

"Homestead laws are liberally construed in favor of the exemptionist, but never as a pretext to claim that which does not really and substantially exist. All the many liberal opinions of the court on this subject are vitalized by the principle, well expressed by Tarbell, J., in *Campbell* v. *Adair,* 45 Miss. 170, in the following language: 'One of the leading objects of these statutes is to create, preserve, and protect a home for the family, for the wife, mother, and children, as well as for the husband and father. A characteristic feature of home is a place of residence, of which occupancy is an essential element. As a general rule, to constitute a homestead there must be actual occuptaion and use of the premises as a home for the family. The premises must be appropriated, dedicated, or used for the purpose designated by the law, to wit, as a home, a place to abide and reside on, "a home for the family."'"

In the case of *Mounger* v. *Gandy, supra,* Augustus Gandy lived with his father and owned lands adjoining the lands there in controversy, and while he and his wife were members of his father's household and living on lands owned and occupied by his father as a homestead, he mortgaged the lands in question, and Carry

Gandy, his wife, did not join in the execution and de-livery of the deed of trust. The lands were wild and uncultivated and not inclosed, with the possible excep-tion of two or three acres on the northern line of the southwest quarter of the northwest quarter of section 18, where there was evidence that Augustus Gandy's fence inclosed a small portion of this land, which was cultivated by the said Augustus Gandy. There was no evidence that the land in question contiguous to the land upon which the Gandys lived was used for homestead purposes, and consequently the court held that under the facts in that case the land in controversy did not constitute a homestead. The test, after all, is whether or not land is used for homestead purposes. The law does not exempt to every head of a household who lives in the country one hundred and sixty acres of land worth not more than three thousand dollars, but the statute exempts to the head of the household a homestead con-sisting of one hundred and sixty acres of land worth, not exceeding in value, three thousand dollars.

In the present case there was no evidence that this isolated forty-acre tract was used for homestead pur-poses, except that occasionally fuel for household use had been gotten from there. The family occupied sev-enty-nine acres of land as tenants at will, and Mr. J. T. Tanner farmed the one hundred and twenty acres of land adjoining the seventy-nine upon which he lived. He was the head of the household, and had a right to choose the homestead. By selling the forty acres he evi-dently intended to choose the land upon which he lived, and the land cultivated by him and adjoining that upon which he lived, as his homestead. Ownership in fee simple of the homestead is not essential. *McGrath* v. *Sinclair*, 55 Miss. 89; *King* v. *Sturges,* 56 Miss. 606; *Hinds* v. *Morgan,* 75 Miss. 509, 23 So. 35. The evidence in this case fails to establish that the land in question was used for homestead purposes. The chancellor erred

in holding the forty-arce tract a part of the homestead.

It was also error to charge the forty acres of land in question with attorneys' fees and other expenses incident to the suit for partition. .

*Reversed and remanded.*