HORTON, et al. *v.* HORTON, et al.

Division A. Nov 27, 1950.

No. 37675 (48 So. (2d) 850)

Farrish & Keady, for appellants.

J. M. Forman and Stanny Sanders, for appellees.

McGehee, C. J.

The sole issue presented by this appeal is whether or not the appellees, S. O. Horton and others, who are three of the children of W. R. Horton, deceased, are entitled, as against his widow, Mrs. Minnie Horton, and the remaining five children, to have a tract of land consisting of 113½ acres sold during her widowhood for a partition of the proceeds where the same is not contiguous to a forty-acre tract on which the decedent had built his residence and resided until his death, and where his widow and some of the children have continued to reside, and where both tracts have been used as one farming unit consisting of less than 160 acres.

The facts bearing on this issue, and which are practically undisputed, if not expressly admitted, are that in December 1925 W. R. Horton purchased forty acres of cut-over and unimproved land from the Turner-Farber Love Lumber Company in Washington County, described

in the bill of complaint. He immediately took possession, began to clear the land and erected a dwelling house thereon for a place of residence with his family, and also erected a house thereon for a tenant. He and his family moved into the dwelling house and thereafter occupied the same as their place of residence, and his outhouses were located on this tract. He farmed the land, raising crops annually thereon, both by his own labor and that of his children and the tenant sharecropper. Approximately three years later he purchased from the same grantor the additional tract of 113½ acres which is involved in this partition proceeding, and which is located three-fourths of a mile to the south of the forty on which he resided.

The "lower" tract of land thus subsequently purchased was also cut-over lands except for twenty or twenty-five acres which were open, and on which there was a tenant house. The eastern portion of the land between the two tracts was owned by a brother of the said W. R. Horton and the western portion by other persons. They had likewise purchased their lands from the said Turner-Farber Love Lumber Company, and when W. R. Horton purchased the 113½ acres it was the nearest farm land then available for use in connection with the forty-acre tract that he was then farming, and on which he had his place of residence. He did not then own, and neither did he nor his widow thereafter acquire any land in addition to the 153½ acres.

W. R. Horton died intestate during the year 1932 while residing on the forty-acre tract and using the other tract in connection therewith as one farm, in the manner hereinafter stated, and the same has continued to be occupied and so used by his widow since that time. If both tracts of the land constituted the homestead of W. R. Horton at the time of his death, then it is not subject to partition or sale for the reason that Mrs. Minnie Horton, as his widow, is conceded to be entitled in such event to the possession and use of the land for homestead purposes

during her widowhood so long as she occupies or uses the same, the entire area being less than 160 acres.

The proof discloses without dispute that the forty acres first purchased by Horton, although almost all of it had been placed in cultivation, was insufficient on which to earn an adequate livelihood for his growing family in carrying on a farming operation for that purpose, which was his sole vocation as a rural resident; that he purchased the additional tract so as to extend his farming operation and be able to support his family and educate his eight children; that he personally farmed, with the help of his children, some of the forty-acre tract and a part of the other tract; that the tenant who was on the forty-acre tract farmed a part thereof and also some land on the other tract; that after purchasing the other tract he cleared additional land thereon and built another tenant house, and that the two tenant sharecroppers residing on this tract were furnished mules, farm implements, etc. which were used interchangeably on both tracts of land; that the landlord's portion of the feed crops grown on the lower tract were stored in the barn on the upper or forty-acre tract; that firewood was hauled from the lower tract as needed for use in connection with the residence on the upper tract; and that in fact the two tracts were utilized as one farming unit the same as if they had been contiguous. Only in a physical way were the two parcels of land disconnected: by every other test they were as one, as contended in the brief of appellants.

██ ██ The trial court based its decision, in holding that the "lower" tract did not constitute a part of the homestead, on the ground that the upper tract alone was worth more than the $3,000 limitation in value allowed for a homestead. But this Court held in the cases of Moody v. Moody, 86 Miss. 323, 38 So. 322, and Dickerson v. Leslie, 94 Miss. 627, 47 So. 659, 660, that the question of value has no place in the consideration of the rights of the surviving widow to the use and occupancy of the homestead; that the beneficent public policy which the

law was designed to establish in this regard must be liberally construed, in order to completely effectuate the legislative purpose; that the value of the homestead is not material in passing on the rights of the surviving widow, since it was never the intention of the Legislature that the "one hundred and sixty acres of land should be reduced in quantity, save in one instance, and that is where the rights of creditors were involved."

In the case of Dickerson v. Leslie, supra, the Court declared that: "No higher claim under the law can be propounded than the right of the widow to claim her homestead rights. No statute ever passed has a greater claim upon the court for liberal construction than this." There are no rights of creditors involved in the instant case, and it seems clear that from the homestead statutes hereinafter discussed and the language above quoted, it was the legislative intent that a rural homesteader should ordinarily be entitled to as much as 160 acres for homestead purposes if such an amount of his land is so located as to be truly susceptible of being devoted to homestead purposes as a unit, and without giving the homestead laws an unreasonable application for the protection of the homesteader in that behalf.

The statutes dealing with the subject of homesteads are: Sections 317, 319, 320, 322 and 478, Code of 1942. Section 317 provides that the quantity of land to which one is entitled as a homestead "shall not exceed one hundred and sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of three thousand ($3,000.00) dollars". Section 319 provides how a homestead may be selected. Section 320 provides that such declaration of selection, when filed for record, shall constitute notice to all persons, etc. Section 322 provides that where no selection is made, or where there has been an improper selection, the tract of land shall be "in the form of, first, a square, or second, a parallelogram, if practicable, and composed, *if practicable*, of contiguous parcels, and including the

dwelling house, and, if practicable, the other principal buildings, and not to exceed one hundred and sixty acres in area, nor three thousand dollars in value. *And in all cases where the homestead may be composed of detached parcels of land, it shall be made up of those nearest the forty acre of* (or) other less tract containing the dwelling house. . . ." (Italics ours.)

Thus ▉▉ ▉▉ it will be readily seen that the statute above quoted from recognizes by its very terms that noncontiguous tracts of land may constitute a homestead. That is to say, Section 322 recognizes the fact that the homestead shall be composed, only "if practicable," of contiguous parcels, and furthermore that "in all cases where the homestead may be composed of detached parcels of land, it shall be made up of those nearest the forty acre of other less tract containing the dwelling house." This statute first appeared as Section 1975, Code of 1892, and was construed in the case of Wiseman v. Parker, 73 Miss. 378, 19 So. 102, 103, as follows: "It (the allotment for homestead) need not inevitably include the buildings other than the residence *nor be composed, in any event, of contiguous parcels.*" (Italics ours.) And, it was pointed out in the case of Hinds v. Morgan, 75 Miss. 509, 23 So. 35, that "under the law as it stood in 1891, the lands allotted must be contiguous, and the outhouses, as well as the dwelling house, must be on the lands allotted."

Moreover, the appellees in their brief on this appeal state that "Appellees freely admit . . . that a rural homestead may consist of noncontiguous parcels of land." However, in making this concession they do maintain, and we think correctly so, that "the fact that land is non-contiguous is a factor to be considered against the homestead claimant." In that connection, they make the pertinent observation that the lower tract in question is not accessible from the upper tract for travel by wagon or motor vehicle except by one route of two and one-fourth miles by public road and by another such route

of three and one-half miles. However, it is accessible by a direct and beaten path of three-fourths mile distance, and this path is much used in going to and from the lower tract. It frequently occurs that access to one parcel of land in cultivation is gained by a pathway from another field or fields, and where such passage is not adequate for wagons or motor vehicles to travel. At any rate, the difficulties and inconveniences of farming the two tracts as a unit and by the use of mules, farm implements and labor interchangeably have been surmounted, and the two tracts have been used successfully for one farming operation for many years.

Section 478 provides: "Where a decedent leaves a widow to whom, with others, his exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood, as long as it is occupied or used by the widow, unless she consent."

In a somewhat exhaustive annotation in the case of Oregon Mortgage Co. v. Dunbar, 73 A. L. R. 113, but which annotation begins on page 116, the general rule is shown to be that one may own a rural homestead in noncontiguous parcels where such separate parcels are put to a use not inconsistent with, and independent of, the purposes of the homestead. In support of this rule there are numerous cases cited from a great many of the states, including three cases from Mississippi of King v. Sturges, 56 Miss. 606, Wiseman v. Parker, 73 Miss. 378, 19 So. 102, and Hinds v. Morgan, 75 Miss. 509, 23 So. 35. The minority rule in that behalf, holding that to have a homestead in land the tracts must be contiguous is supported by decisions from only eight of the states, and in those states the decisions are in most instances based upon the construction given by the court to a statute. Such was the rule in Mississippi prior to the Code of 1892, as hereinbefore shown.

In King v. Sturges, supra, there was a forty-acre tract on which there were no buildings but which was culti-

vated by the owner, a man of family, and was held to be homestead property where it adjoined land owned by a third party on which there was a house occupied by the homesteader as a tenant at will. In other words, there was connected, to form a homestead, forty acres of unimproved but cultivated land and a dwelling house situated on an adjoining tract, owned by another. At the time of that decision, the statute then in force required the homestead property to be in one tract or on contiguous tracts.

In Tanner v. Tanner, 111 Miss. 460, 71 So. 749, the forty-acre tract there in question was not cleared or cultivated; only on occasion did Tanner obtain wood therefrom for fuel. There was no evidence of any use made of the forty acres for homestead purposes except to obtain fuel, and this use was held to be insufficient alone to make the tract a part of other lands conceded to be Tanner's homestead. In that case, the householder occupied another tract of land three-quarters of a mile distant for homestead purposes. The Court held that the test as to whether or not land is a homestead is its use for homestead purposes.

We have concluded that the facts in the case at bar are materially different from those involved in Nye v. Winborn, 120 Miss. 1, 81 So. 644, 645 and the other cases cited and discussed by the appellees. In that case, the homestead claimant had, prior to the year 1910, been a section laborer on a railroad which passed through the Town of Mt. Olive. While engaged in that occupation, he purchased a residence in the town where he and his wife continued to reside. A year or two later, he quit working for the railroad company and bought the eighty acres of land involved in that case. At that time this land was in the woods. It was situated two and a half miles from the corporate limits of the town where his residence property was located. After purchasing the eighty acres of land, Winborn cleared and put in cultivation about twenty acres. He built a small two-room cabin

on it, which was once occupied by a tenant. At the time, in 1919, the eighty-acre tract was sold under execution and for some time prior thereto, Winborn had devoted his entire time to farming this tract of land. He sought unsuccessfully to cancel the execution sale on the ground that both the eighty-acre tract and his urban property constituted one homestead. The Court, in its opinion, stated "The 80 acres of land is in no sense a part or parcel of the town property. There is no connection whatever between the residence in Mount Olive and the eighty acres of land; they are absolutely separate and distinct." In stating that there is no connection whatever between the residence in Mt. Olive and the eighty acres of land, we think that the Court meant more than that they were noncontiguous tracts. We think the Court had in mind that the two tracts were used for separate and distinct purposes, one tract for a place of residence and the other for a farm. Whereas, in the instant case, the 113½-acre tract was used as a part of Horton's farm in the same manner that the forty-acre tract was used for said purpose, notwithstanding the further fact that his residence and outhouses were located on the forty-acre tract.

In Mounger v. Gandy, 110 Miss. 133, 69 So. 817, there was involved an attempt to defeat the enforcement of a deed of trust given by W. W. Gandy on forty acres of land, and in which conveyance his wife did not join. This land was wild and uncultivated, except for two or three acres farmed by Gandy's father, who owned adjoining land. W. W. Gandy never owned a dwelling house of any kind, and he and his wife resided in his father's house.

In the case of Meyers v. American Oil Company, 192 Miss. 180, 5 So. (2d) 218, it appears that Meyers owned a piece of town property used as a restaurant, etc. He executed a deed of trust thereon to the American Oil Company, which his wife did not sign. The evidence showed that Meyers and his wife lived in a rented house

a short distance from the property in question until nearly a year after the deed of trust was executed, when they moved their household goods into the restaurant building and began to live there. There was no connection between the restaurant property and the house three-quarters of a mile away which was rented and occupied by the Meyers at the time of the execution of the deed of trust. In other words, the two separate parcels of real estate were being devoted to entirely different uses.

In the case of Semmes v. Wheatley, Miss., 7 So. 430, it was held that a parcel of land, on which was situated a dwelling that was occupied as a residence and used as a boarding house, and around which building there was a fence, and on which same side of the road there was a store, formerly rented but vacant at the time of the suit, all constituted the homestead; but that the two stores located on the opposite side of the road and which were rented out were not a part of the homestead. In that case, the property on one side of the road or street in the Town of Arcola was devoted to an entirely different use than that on the other side.

We don't think that either the cases dealing only with urban property or those dealing with an urban tract and a rural tract as constituting together one homestead are applicable to a case where rural lands are involved. In a town or city the homesteader can only claim his actual place of residence and the lot on which the same is situated. Whereas, a rural resident may claim as much as 160 acres of land, and this means that he can claim land other than the spot on which the residence is located. The statutes are so written, and we think ▇▇▇ a different principle is involved in determining whether two rural tracts are both devoted to homestead purposes as compared to two separate parcels of urban property, since the latter are usually used for entirely different purposes.

This brings us again to the rule announced in Tanner v. Tanner, supra, when the Court said: "The test, after all, is whether or not land is used for homestead purposes", [111 Miss. 460, 71 So. 750] and also constrains us to again emphasize the fact that *both* the forty-acre and the 113½-acre tracts of Horton were devoted to farming and homestead purposes.

But counsel for appellees urge upon the Court here the significance of the language used in the case of Campbell v. Adair, 45 Miss. 170, when the Court said: "One of the leading objects of these statutes is to create, preserve and protect a home for the family, for the wife, mother and children, as well as for the husband and father. A characteristic feature of home is a place of residence, of which occupancy is an essential element. As a general rule, to constitute a homestead there must be actual occupation, and use of the premises as a home for the family. The premises must be appropriated, dedicated or used for the purpose designated by the law, to wit: as a home, a place to abide and reside on, 'a home for the family.' "

However, the foregoing announcement would be no less applicable to three forties of an 160-acre tract of rural land where the residence and outhouses are all located on the other contiguous forty, and where such three forties are held to constitute a part of the homestead even though the claimant does not reside on either of them nor have any of his outhouses located thereon, than it would be applicable in the instant case.

 Finally, we do not base our decision in this case, when upholding the right of the widow to claim both of the tracts of land as a homestead "as long as it is occupied or used" by her during widowhood, on the mere fact that she derives from the 113½-acre tract here involved a large part of her income and support. That factor was present in Nye v. Winborn, supra, and is usually involved in cases where an urban resident may undertake to claim a store building and lot or other place

of business a short distance away from his residence and lot, and from which store or other business he may derive a substantial portion, if not all, of his income. Such fact would not be the test, but the controlling factor is whether or not the property is being devoted to homestead purposes and uses consistent with the purpose and use to which his home tract is devoted. The receipt of income from a particular noncontiguous tract, and from which the family is supported in whole or in part is only a factor to be considered in a proper case.

The controlling circumstances in the case at bar is that ██ █ the lower tract, which is the subject matter of this partition proceeding, is used as a part of one farming operation the same as if it were adjoining the tract on which the dwelling house is situated; it was so used by the homesteader and his family, and was purchased for that purpose, and not merely as an investment to be leased to others for income purposes alone. It was actually and not too inconveniently used with the forty acres of cultivated land, where the homestead claimant resided, and was necessary to the convenient enjoyment of the place of residence as a home for the family, and was an appurtenance thereto. Unless the homesteader could have acquired this additional land so as to extend his farming operations, it would have become necessary in all probability that he sell the forty-acre tract and remove himself and his family to a place where he could have adequate land to serve his purposes as a homestead for himself and his large family. In the instant case, it was not practicable for him to own substantially the area of 160 acres in contiguous parcels.

The factual situation hereinbefore disclosed will show that the precise question has not been dealt with in any of our previous decisions in regard to two noncontiguous parcels of rural, agricultural lands in cultivation. It is for this reason that we have dealt at some length with the particular facts involved, so as to limit the decisions to the precise question before us, and because of the

importance of the case as to when noncontiguous parcels of farm land may constitute a homestead. The decision is not intended to control where a noncontiguous tract is located at such an unreasonable distance from the home site as to prevent its reasonably convenient use in connection therewith as a single unit and for homestead purposes. Each case must be governed by its own particular facts when a serious question arises as to the right to claim two or more noncontiguous parcels of rural land as a homestead.

We are fully persuaded that the facts in the instant case are such as to come clearly within the provision of Section 322, Code 1942, to the effect that a homestead should be "composed, if practicable, of contiguous parcels, . . .".

The decree of the trial court whereby the land in question was ordered sold for partition must, therefore, be reversed and the bill of complaint dismissed.

Reversed and judgment here for appellants.