DAILY *v.* CITY OF GULFPORT.

Division B. Oct. 22, 1951.

No. 38057 (54 So. (2d) 485)

362

Ross & Butts, for appellant.

Robt. R. Buntin, and Ernest Martin, for appellee.

364

**Hall, J.**

In 1935 James M. Daily, husband of appellant, bought the North half of Lot 23 in Satsuma Subdivision, which was a rural subdivision outside the city limits of Gulfport. The land so purchased consisted of about five acres, and had a one-room log house situated thereon. In a few months appellant and her husband moved into this house and began making improvements and constructing additions thereto, finally converting it into a four-room house where they and their children have continued to live until the present time. A public road, known as Moses Road, ran through this lot leaving a strip thereof about sixty or seventy feet in width on the West side of the road. That portion of the lot lying East of the road contained the house-site and was placed under fence. In 1939 Mr. Daily purchased from the State five additional lots numbered 24 to 28, inclusive, in the same subdivision, which contained approximately 22 acres, and it was his intention to clear this land and plant a satsuma orchard thereon. Because of his poor health and limited funds he did not complete the clearing of the land. In fact, he did very little toward that end, and none of it was placed under fence, but it all was contiguous to his land in Lot 23 and nothing separated it therefrom except the road above mentioned. Neither Mr. Daily nor his wife owned any other land. He applied for and was granted exemption from ad

valorem taxes on all the land as a homestead for the years 1940 and 1941.

In 1942 the City of Gulfport was interested in obtaining location of a government air base on and in the vicinity of the lands in question and its officials approached Mr. Daily and opened negotiations for the purchase of Lots 24 to 28 inclusive and also all that part of the North half of Lot 23 lying West of said road. These negotiations culminated with the execution of a quitclaim deed by Mr. Daily to the City of Gulfport on May 7, 1942, covering all the land aforesaid except that part of the North half of Lot 23 lying East of the road, for a consideration of $500. There was no representation in this deed as to whether the land did or did not constitute a part of grantor's homestead. Mrs. Daily, the appellant here, did not join in the execution of this deed and was not present at the time. The Mayor and one of the City Commissioners visited this land before execution of the deed and knew that the Daily family was residing thereon and knew that the land purchased by the city was contiguous to that on which the dwelling house stood.

The government took possession of the land under some kind of agreement with the city not disclosed by the record and established and operated an air base thereon until after the war, and when it was abandoned by the government the city assumed possession and, having extended the city limits so as to bring this property within the corporate limits, platted and created a new subdivision or city addition thereon, dividing it into much smaller lots, and offered the lots for sale to the general public. Thereupon Mrs. Daily filed this suit alleging that at and before the time of the execution of the deed to the city said property was her homestead, that she did not sign or consent to the deed to the city, and that consequently the same is void. The prayer was for a decree so declaring. The city answered and denied that the land in question was ever impressed with the

character of a homestead, and, upon the hearing, the learned chancellor upheld the answer and dismissed the bill of complaint from which action Mrs. Daily appeals. As was stated by the chancellor in his written opinion we agree that the question presented is a close one. However, since there is no substantial dispute as to the material facts, the question is one of law.

Section 317, Code of 1942, then in effect, provides, in part: "Every citizen of this State, male or female, being a householder, and having a family; shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of three thousand dollars * * *".

Section 330, Code of 1942, provides that a conveyance of the homestead exempted from execution shall not be valid or binding unless signed by the wife of the owner if he be married and living with his wife.

It is undisputed that Mr. Daily was married and living with his wife on this property, that the total area thereof was less than 160 acres, and that the value thereof with all improvements was less than $3,000. It is contended by the appellee that no land, even though adjoining that upon which the residence is situated, can be claimed as a homestead unless it is devoted to some useful purpose in connection with the use of the dwelling house. It must be readily observed, however, that Section 317 does not so provide. It exempts "the land and buildings owned and occupied as a residence by him or her, but the quantity of land shall not exceed one hundred and sixty acres". To hold with appellee's contention would require a narrow construction of the law, which runs counter to our holding in Campbell v. Adair, 45 Miss. 170, 182, that ██ ██ "the statutes granting homestead exemption are entitled to be liberally construed by this

Court." In the same case it was further said on page 178 of 45 Miss.: "To require the actual, literal, continuous, physical occupation of the homestead by some one or more of the family would turn a humane and beneficent law into one of imprisonment and punishment. It would subject the homestead, provided by a wise and liberal policy, to the casualties of life and the chances of unforeseen accident; it would require of the family the precision of military regulations, and would demand that endless 'watch and ward' which the law could never have contemplated." It is undisputed that the reason the land had not been cleared and planted was that Mr. Daily was seriously ill with heart trouble (a casualty of life as above mentioned) and that Mrs. Daily had to obtain employment to supplement his pension from the government in providing necessities for the support of the family, and that his illness and their lack of funds prevented the actual utilization of all the land. █ Our statute does not require the actual utilization of every acre of land in a tract before it can be claimed as a homestead, nor does the general law elsewhere so require.

In 26 Am. Jur. p. 50-51, Homestead, Sec. 81, it is said: "Under the laws which have been adopted in many of the states, it must appear, in order that the claim of homestead may be sustained, that the premises in dispute were, at the time of the transaction between the parties, occupied as a residence, dwelling or home by the claimant and his family. Occupancy or use of premises by a family has been said to be presumptive evidence of the appropriation of the property as a homestead.

"If property is used as a home or a part thereof, it is immaterial whether it is farmed, grazed, or devoted to any agricultural use whatever. The land may be used solely for living on without being devoted to any other use, and still be a homestead. So, where a tract of land consisting of a pre-emption and a desert claim is included in a homestead declaration, it is not necessary to show

that the whole was devoted to any particular or profitable use by the claimant or that he devoted it to any use whatever, other than as a part of his home place or home.''

In the case of Hinds v. Morgan, 75 Miss. 509, 23 So. 35, is found a scholarly discussion which not only traces the history of our homestead exemption laws but shows the evolution whereby with the passing of the years our courts have become more and more liberal in their construction in favor of the exemptionist in furtherance of a sound public policy.

Appellee relies upon our holdings in a line of cases where the family has never moved upon or occupied the land claimed as a homestead but only acquired same with the intention at some future date of moving thereon. In such instances the court held that there must be occupancy to uphold a homestead claim, but those authorities have no applicability here because the Dailys did actually live upon the tract.

 Appellee also contends that the lands were not contiguous because the road separated them, but such a separation does not necessarily defeat a homestead claim. Acker v. Trueland, 56 Miss. 30; Parisot v. Tucker, 65 Miss. 439, 4 So. 113; Horton v. Horton, 210 Miss. 116, 48 So. (2d) 850.

As to the situation appearing from the facts in this case we find to be particularly applicable an annotation in 73 A. L. R. page 121, as follows: ''As a general rule, if one owning a present homestead purchases contiguous lots, so as to enlarge the area of his home place, with the intention that they shall become a part of his homestead, they will be so considered, unless they are put to some use inconsistent with the homestead use, and under such circumstances as evince a purpose that they were not acquired to be used in connection with the home, but for some use inconsistent with, and independent of, it.'' Here there was no use inconsistent with the homestead claim, but the declared intention was .

that the lots last acquired were to be cleared and planted with satsuma trees, which is entirely consistent with its use as a homestead.

Our views are strengthened by Zukoski v. McIntyre, 93 Miss. 806, 811, 47 So. 435, 436, where this court said: "The homestead right is a favored one in the law, and the courts will not be on the alert to defeat the assertion of those rights. ██ █ Whenever there is serious doubt as to whether or not property is or is not a homestead, the doubt should be solved in favor of the exemptionist, sustaining, instead of defeating, the estate, which is created by a sound legal policy."

The decree dismissing appellant's bill is accordingly reversed and a decree will here be entered cancelling the deed from appellant's husband to the city.

Reversed and decree here.