**In re Arthur CARPENTER.**

**Arthur Carpenter, Plaintiff,**

v.

**First State Bank, Defendant.**

**Bankruptcy No. 96–10984.**
**Adversary No. 00–1077.**

United States Bankruptcy Court,
N.D. Mississippi.

April 1, 2002.

B. Sean Akins, Fortier & Akins, Ripley, MS, for plaintiff.

William F. Schneller, Jr., Jones & Schneller, Holly Springs, MS, for defendant.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are the following pleadings:

(1) Complaint filed by the plaintiff, Arthur Carpenter, against the defendant, First State Bank, seeking to hold the bank in contempt, etc.

(2) Complaint filed by the plaintiff against the defendant seeking to enjoin an execution sale of a parcel of property owned by the plaintiff.

(3) Motion filed by the plaintiff seeking to avoid the judicial lien in favor of the defendant to the extent that it impairs the plaintiff's homestead exemption.

Appropriate responses were filed by the defendant; and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II.

In the pre-trial order, the parties stipulated to the following facts:

(1) The debtor, Arthur Carpenter, borrowed $2,966.58 from First State Bank on December 28, 1984. Carpenter made interest payments, and the note was renewed with the last renewal being on December 22, 1988. On December 28, 1989, the note was charged off by First State Bank. In mid–1993, a complaint was filed in the Circuit Court of Marshall County, Mississippi, to collect this unpaid debt. The debtor did not respond. A default judgment was taken on September 28, 1993, and entered by the court on October 13, 1993, in the amount of $4,904.23, plus interest and attorney's fees totaling $6,596.02.

(2) During the early 1990's, Arthur Carpenter was married to Shirley A. Carpenter, and they operated a service station on a 7.8 acre tract of land on U.S. Hwy. 72 north of Ashland, Mississippi. They also owned Lot 15 of the Dogwood Hills Subdivision which was their residence. In 1992, the Mississippi Transportation Commission purchased a portion of the commercial property from the Carpenters during the U.S. Hwy. 72 expansion leaving them with approximately 2.5 acres.

(3) On February 13, 1996, a writ of execution was issued by the Circuit Court Clerk of Marshall County, Mississippi, directing the Sheriff of Benton County, Mississippi, to levy execution on the 2.5 acre tract. A notice of execution sale was published in the Southern Advocate which set the execution sale for March 22, 1996, within legal hours.

(4) On March 15, 1996, Arthur Carpenter filed a Chapter 7 petition with the United States Bankruptcy Court for the Northern District of Mississippi. Notices were issued by the court on March 25, 1996.

(5) The Sheriff of Benton County, Mississippi, conducted the execution sale as scheduled on March 22, 1996. A Sheriff's deed was issued to Spark's Farms, Inc., for $8,550.00.

(6) On July 2, 1996, the debtor received a discharge, and on July 10, 1996, the case was closed.

(7) On April 9, 1997, the debtor moved to reopen the case to litigate alleged automatic stay violations. The case was reopened on June 27, 1997. Each side was given 30 days to file pleadings relating to automatic stay violations, etc.

(8) On August 11, 1997, Bill Kemp on behalf of First State Bank filed an amended motion to ratify the execution sale. A default judgment was entered and later set

aside. The debtor filed an answer and counter-complaint and the matter was heard on July 28, 1999. The court denied the amended motion to ratify the execution sale and ordered First State Bank to secure the reconveyance of the 2.5 acre tract to the debtor. This order closed adversary proceeding number 97–1167.

(9) On August 2, 1999, First State Bank sought relief from the automatic stay to proceed with a new execution sale. The court granted this motion.

(10) On March 23, 2000, the debtor filed a complaint for contempt of court, for reinstatement of mortgage and deed of trust, and to set aside foreclosure, all in adversary proceeding number 00–1077. This adversary proceeding also named Sparks Farms, Inc., as a defendant. The answer of First State Bank was filed by Bill Schneller on April 19, 2000. On July 18, 2000, the debtor voluntarily dismissed Sparks Farms, Inc., from the case following receipt of a quitclaim deed wherein Sparks Farms, Inc., reconveyed the 2.5 acres to the debtor.

(11) First State Bank scheduled another execution sale for January 3, 2002. The debtor filed for and obtained a temporary restraining order to stop the sale pending resolution of the complaint. The debtor was also given permission to amend the complaint to request lien avoidance. The debtor posted a $1,000.00 bond, and the matter was set for trial.

### III.

### *Other Factual Events*

(1) On March 15, 1996, the plaintiff, Arthur Carpenter (Carpenter), filed his voluntary bankruptcy case.

(2) Although not listed on his bankruptcy schedules at the time of the aforementioned filing, Carpenter owned with his then wife, Shirley A. Carpenter, a parcel of property identified as Lot 15, Dogwood Hills Subdivision, which contained 8.9 acres. Carpenter also owned exclusively a 2.54 acre parcel of property which is the subject matter of this litigation. This latter parcel had previously been used for commercial purposes as a service station before being partially condemned by the Mississippi Transportation Commission. According to the testimony of Darrell Morrison, the Benton County Tax Assessor/Collector, the 2.54 acre parcel could not have been claimed as exempt homestead for tax purposes since it was not jointly owned by Carpenter and his spouse.

(3) On March 22, 1996, pursuant to a judgment held by First State Bank, the 2.54 acre parcel of property was sold at an execution sale to Sparks Farms, Inc. This sale was subsequently set aside by this court since it occurred after the automatic stay had been activated following Carpenter's bankruptcy filing. The order memorializing this decision was entered on July 28, 1999.

(4) On April 1, 1996, Carpenter's attorney, Clencie Cotton, filed the bankruptcy schedules which indicated that Carpenter owned a 7.9 acre parcel of unimproved property. The schedules did not disclose the ownership of Lot 15, Dogwood Hills Subdivision, and were not amended to reflect this ownership until February 3, 1999. The 7.9 acre unimproved parcel was claimed as exempt homestead. However, no property owned by Carpenter at that time contained this amount of acreage. In his testimony, Cotton indicated that he intended this homestead claim to encompass the 2.54 acre parcel, but the description that he utilized in the schedules created a significant ambiguity.

Cotton testified that he claimed this parcel as exempt homestead because he was

of the opinion that Carpenter was going to deed his interest in Lot 15, Dogwood Hills Subdivision, to Shirley A. Carpenter in the divorce proceeding. Cotton undertook this strategy despite the fact that the property was unimproved and had never been occupied for residential purposes.

(5) On July 2, 1996, Carpenter received his discharge in bankruptcy, and on July 10, 1996, the bankruptcy case was closed.

(6) On October 30, 1996, as a part of the settlement of the divorce proceeding and contrary to Cotton's expectations, Carpenter *received* a deed from Shirley A. Carpenter to Lot 15, Dogwood Hills Subdivision. Carpenter then subsequently deeded this property to his current wife, Lucy Emory Carpenter.

(7) On June 27, 1997, Carpenter's bankruptcy case was reopened pursuant to a motion filed on April 9, 1997. Carpenter and First State Bank were given 30 days to file any appropriate pleadings.

(8) On August 11, 1997, First State Bank filed a motion to ratify the previous execution sale conducted on March 22, 1996. The court declined to do so, and directed First State Bank to have the property reconveyed to Carpenter. Because of the intervening illness and ultimate death of the attorney representing First State Bank, this decision was not effectively rendered until July 28, 1999, and an order was entered on that date.

(9) On August 2, 1999, First State Bank filed a motion seeking relief from the automatic stay as to the 2.54 acre parcel. An order was entered sustaining this motion on March 17, 2000.

(10) On March 23, 2000, Carpenter filed a complaint to hold First State Bank in contempt for allegedly violating the automatic stay, to reinstate the mortgage and deed of trust, and to set aside the foreclosure. The court notes that this complaint contained at least two misnomers. First State Bank did not hold a mortgage or deed of trust, and no foreclosure had occurred.

(11) On July 18, 2000, Sparks Farms, Inc., finally reconveyed the 2.54 acre parcel of property to Carpenter by a quitclaim deed following the payment of a negotiated amount of compensation by First State Bank. This conveyance was obtained in order to comply with the court's order entered almost one year earlier on July 28, 1999.

(12) In December, 2001, Carpenter and his current wife, Lucy Emory Carpenter, exchanged deeds conveying title to both the 2.54 acre parcel and Lot 15, Dogwood Hills Subdivision, to themselves as joint tenants.

(13) Carpenter did not attempt to avoid the judgment lien of First State Bank to the extent that it impaired his alleged homestead exemption until December, 2001.

(14) Because the automatic stay had been previously lifted, First State Bank scheduled a second execution sale for January 3, 2002. Carpenter sought and obtained a temporary restraining order prohibiting the sale on that date.

## IV.

### *Uses of the Respective Properties*

*Lot 15, Dogwood Hills Subdivision*— This property contains 8.9 acres and is the site of Carpenter's residence, a mobile home. It was owned by Carpenter and Shirley A. Carpenter until October 30, 1996, when it was deeded exclusively to Carpenter. He subsequently deeded this property to his current wife, Lucy Emory Carpenter. Thereafter, Lucy Emory Carpenter deeded a one-half interest to Carpenter in December, 2001. Carpenter tes-

tified that he keeps a few cows on this property, as well as, some junked cars which are utilized for the sale of parts. This property has been claimed as exempt homestead for tax purposes for several years.

*2.54 Acre Parcel*—This parcel, which was formerly the site of a service station, is presently unimproved and is located one to one and one-half miles from Lot 15, Dogwood Hills Subdivision. Carpenter testified that his son utilizes this property to sell, store, and repair used cars, as well as, to sell car parts. Carpenter indicated that he utilizes this property for similar purposes. While this parcel is relatively small, Carpenter indicated that he has kept "a cow or two" on the property. Prior to 1992, this property contained approximately four acres until a portion was condemned by the Mississippi Transportation Commission for highway right of way purposes. This property was owned exclusively by Carpenter until December, 2001, when he conveyed a one-half interest to his current wife, Lucy Emory Carpenter. This property has never been claimed as exempt homestead for tax purposes.

### V.

Following the trial of this matter, in a bench opinion, the court dismissed the allegations of contempt against First State Bank. The said bench opinion is incorporated herein by reference. Thereafter, the primary question that remained unresolved was whether Carpenter could claim the non-contiguous 2.54 acre parcel as a part of his exempt homestead. The resolution of this question will likewise determine whether Carpenter can avoid the judicial lien of First State Bank to the extent that it impairs his homestead exemption.

### VI.

In *Shows v. Watkins,* 485 So.2d 288 (Miss.1986), the Mississippi Supreme Court commented on whether non-contiguous parcels can be claimed as homestead, to-wit:

Very little Mississippi case law was found defining exactly how homestead is determined. One case did, however, hold that when determining whether a non-contiguous tract should be allowed as homestead, "the controlling factor is whether or not the property is being devoted to homestead purposes and uses consistent with the purpose and use to which his home tract is devoted." *Horton v. Horton,* 210 Miss. 116, 48 So.2d 850, 855 (1950). It can be gleaned from the holding in *Horton* that an important factor in determining homestead is the purpose and the use the property is put to.

*Id.* at p. 291.

In *In re Cobbins,* 234 B.R. 882 (Bankr. S.D.Miss.1999), *aff'd* 227 F.3d 302 (5th Cir. 2000), the following comments authored by Judge Edward Ellington are noteworthy, to-wit:

There is case law to the effect that the homestead statute must be liberally construed in the exemptionist's favor. *See, e.g., Levis–Zukoski Mercantile Co. v. McIntyre,* 93 Miss. 806, 47 So. 435 (1908) ("The homestead right being a favored one in law, whenever there is serious doubt as to whether the property is or is not a homestead, the doubt should be resolved in favor of the exemptionist, sustaining, instead of defeating, the estate, which is created by sound public policy."); *Dogan v. Cooley,* 184 Miss. 106, 185 So. 783, 790 (1939) ("The exemption laws of the state have been liberally construed...to guard the family from the pitiless consequences of imprudence and the harsh lashing of adversity.") *Daily v. Gulfport,* 212 Miss. 361, 54 So.2d 485 (1951) ("statutes

granting homestead exemption are entitled to be liberally construed"); *Biggs v. Roberts,* 237 Miss. 406, 115 So.2d 151 (1959) ("exemption laws are construed liberally in favor of the owner of the property exempted"); *Matter of Williamson,* 844 F.2d 1166, 1169 (5th Cir. 1988) ("In construing the homestead statute, the Mississippi Supreme Court has established a rule of construction that requires resolution of doubt or ambiguity in the exemptionist's favor [because] [t]he concern of the homestead exemption provision is to protect the entire family from the misfortunes or imprudence of its primary breadwinner, referred to in the statutory language as householder.").

*Id.* at p. 304.

As Mississippi courts recognize, the "controlling factor" in determining the homestead character of any given parcel is "whether or not the property is devoted to homestead purposes..."

*Id.* at p. 305.

While this court recognizes that a homestead exemption claim is to be liberally construed in favor of the exemptionist, the court must be guided by the use of the property as the "controlling factor," which is also a recognized principal of Mississippi law.

In the proceeding currently before the court, the following factors are significant, to-wit:

(1) At the time of the filing of Carpenter's bankruptcy case, he was residing with his then wife, Shirley A. Carpenter, in a mobile home located on Lot 15, Dogwood Hills Subdivision. This property was owned jointly by both of them and was claimed as exempt homestead for ad valorem tax purposes. The 2.54 acre parcel, which had formerly been utilized for commercial purposes as a service station, was unimproved and owned exclusively by Carpenter. It was not claimed as exempt homestead until after December, 2001, following the exchange of deeds between Carpenter and his current wife, Lucy Emory Carpenter.

(2) The testimony indicated that the primary use of the 2.54 acre parcel is for the storage, repair, and sale of automobile parts by Carpenter's son. There was no testimony that Carpenter's son uses Lot 15, Dogwood Hills Subdivision, for this same purpose. Carpenter indicated that he utilizes both parcels of property for similar purposes, but to a much lessor extent. He also testified that he kept a small number of cattle on each tract, but the extent of this usage was, at best, vague. Regardless, from the overall flavor of the testimony, it appears to the court that the primary use of the 2.54 acre parcel is by Carpenter's son.

(3) Carpenter testified that he intended to claim the property on which his mobile home was situated as his homestead. He subsequently added that he also wanted to include the former service station property within his exemption.

(4) The Benton County Tax Assessor/Collector, Darrell Morrison, testified that Carpenter could not claim the 2.54 acre parcel as exempt homestead for tax purposes at the time that this bankruptcy case was filed because it was not owned in the same legal capacity as Lot 15, Dogwood Hills Subdivision, which was claimed as exempt. While being able to claim a parcel of property as exempt for tax purposes is not the overriding test to determine whether a property can be claimed as homestead, it certainly evidences an in-

**108**

tent by the property owner that the property is not considered as homestead.

(5) The history of the use of the 2.54 acre parcel indicates that this property has and is still being utilized primarily for *commercial* purposes. This is not consistent with the use of Lot 15, Dogwood Hills Subdivision, which is primarily being utilized as the Carpenters' *residence*.

(6) The operative time to determine whether a property is exempt for purposes of bankruptcy is as of the date of the bankruptcy filing. While exemption claims may be modified throughout the administration of the bankruptcy case, the character and use of the property should not be changed to tactically create an exemption where one would not have existed at the time of the filing of the petition.

For the reasons cited hereinabove, the court is of the opinion that the 2.54 acre parcel was not exemptible as homestead at the time that Carpenter filed his bankruptcy petition, nor can it be claimed as homestead now. For these reasons, the court is of the opinion that Carpenter's motion to avoid the judicial lien of First State Bank to the extent that it impairs his homestead exemption is not well taken as to the 2.54 acre parcel.

The temporary restraining order shall be dissolved to permit First State Bank to complete its execution sale. Thereafter, the court will determine the disposition of any excess proceeds realized from the sale, as well as, the disposition of the bond posted by Carpenter.

An order will be entered consistent with this opinion.