Davis *et al. v.* Davidor *et al.*

(In Banc.   Oct. 28, 1946.)

[27 So. (2d) 371.   No. 36149.]

Wells, Wells, Newman & Thomas, of Jackson, and Rawls & Hathorn, of Columbia, for appellants.

Satterfield, Ewing & Hedgepeth, of Jackson, for appellees.

Argued orally by **W. R. Newman, Jr.,** for appellant, and by **J. C. Satterfield**, for appellees.

**Roberds, J.**, delivered the opinion of the Court on suggestion of error.

We have given earnest consideration to the suggestion of error. We are of the opinion that our original decision was correct, and that the suggestion of error should be, and it is, overruled. However, some of the pronouncements in the original opinion were not necessary to a decision of the case at bar, and, therefore, that opinion is withdrawn and the following is substituted therefor.

On July 12, 1943, appellant, W. M. Davis (whom we will hereafter call Bill Davis), executed to appellee Robert H. Davidor an oil and gas lease and a mineral deed to one-half the minerals on and in forty acres of land in Marion County, Mississippi, both instruments reciting "The property covered hereby is not the homestead of lessor, nor has it ever been used or claimed by him as such." The wife of Bill Davis did not join in the execution of these instruments. The lease was assigned by Davidor to appellee North Central Texas Oil Company, Inc.

In July, 1944, Bill Davis and his wife executed to appellant G. G. Stanford what is termed a "top" oil and gas lease on the same lands.

Bill Davis and his wife and Stanford filed the bill in this cause seeking to remove as a cloud upon their respective claims and titles to said forty acres of land the lease · and mineral deed executed by Davis alone to Davidor, claiming, as ground for relief, that the land constituted a part of the homestead of Bill Davis and his wife when the Davidor instruments were executed, and that they were void because of the failure of the wife to join therein. The chancellor dismissed the bill and the complainants therein appeal.

Since 1912, Wallace Davis, a brother of Bill Davis, has owned and occupied as his homestead eighty acres of land consisting of two forty-acre tracts lying north and south of each other, the residence being located near the center of the north forty acres. For some years prior to 1938,

Bill Davis was a share-cropper on that north forty under Wallace Davis, Bill and his family, consisting of his wife and daughter, occupying a small house located thereon which was constructed by Wallace and Bill. In 1938, Bill Davis quit farming, and his wife and daughter went to Gulfport to work in a garment plant. Wallace Davis then permitted Bill to occupy a room in his home, Bill moving his household and kitchen furniture to the residence of Wallace, and apparently taking his meals with Wallace's family. No charge was made against Bill. Mrs. Bill Davis visited her husband at infrequent intervals, one time remaining as long as six months while being laid off from work. On these visits, she and her husband occupied that room. Bill Davis was working as a day laborer, mainly at a sawmill operated by Wallace. That situation as to the family life continued from 1938 until after the Davidor lease and deed were executed. In the meantime, and in 1940, Bill Davis purchased from one Ladner forty acres of land in Marion County lying west of and adjoining Wallace's north forty acres, the vendor retaining all minerals in the land, and in September, 1942, Bill Davis purchased from one Rayborn another forty acres adjoining and lying immediately south of the Ladner forty. That resulted in Bill Davis owning eighty acres in Marion County lying immediately west of the eighty acres owned and occupied by Wallace as his homestead in Lamar County, the county line dividing the two tracts. Following are the acts of use and occupancy exercised by Bill Davis upon his land before he executed the lease and deed to Davidor: As to the north, or Ladner, forty he had cleared a small plot near the middle of the forty where he expected to locate his residence. Wallace Davis had a sawmill located on that forty. At that mill some blocks for the contemplated residence had been cut and stacked at or near this cleared spot—just how many blocks is not shown; some framing and sills for the house had been cut and stacked near the mill, which mill was located some thirty or forty feet west of the north forty of Wallace

Davis. Bill Davis was asked: "On July 12, 1943, Mr. Davis, when you executed a lease to the south forty to Mr. Davidor, where was the material for your house?" He replied: "It was stacked right side of the road there at the mill, on the north forty . . . I had the material down there but I had not put any of it together." As to the south forty (which is covered by the lease and deed in question) Bill Davis testified he had cleared some eighteen acres—"hired some negroes and piled the saplings and burned them;" had removed an old wire fence which was partly around that forty; had taken down some old posts and cut some new posts, the number not being shown; that formerly a small patch had been planted to garden by a former sawmill operator, and Wallace Davis one year had a small turnip bed thereon. Bill had some calves and a hog or two which roamed over the eighty acres, as well as other lands, along with cattle, and hogs of other persons running at large. There was no house, building or structure of any kind on the land and none of it was in cultivation.

That was the situation as to the family life and living conditions of Bill Davis and his manner of use of the eighty acres at the time he executed the Davidor lease and mineral deed. In these circumstances, appellees say (1) that the interest or title of Bill Davis in the Wallace Davis lands, on which he actually resided, was not such as that he could tie, or connect, the same with his ownership and use of the eighty acres so as to create a homestead right in such eighty acres; (2) that the overt acts of use and ownership upon said eighty acres were not sufficient to legally stamp the lands as a homestead; but, if mistaken in these contentions, (3) that the recitals in the instruments that "The property covered hereby is not the homestead of lessor, nor has it ever been used or claimed by him as such," made by Bill Davis, the owner of the lands and head of the family, worked an estoppel under the circumstances here preventing Bill Davis and his wife asserting their homestead right, since there had never been an

actual occupancy of said land by Bill Davis and family as a home; that the most that could be said is that they intended to occupy it, and that under such circumstances the intention of the husband controlled and determined the question.

The view we have taken requires us to pass only upon the first question. Sections 318 and 330, Code of 1942, exempt from sale, mortgage, etc., without the signature of the wife, ". . . the land and buildings owned and occupied as a residence by such person, . . ." There was no building or structure of any kind on the land in question. None of it was in cultivation. Bill Davis did not physically reside thereon; therefore, to claim it as a homestead it is necessary for him to connect his ownership and use of that eighty acres, on which he did not reside, with his estate or title in and to the adjoining land of Wallace Davis, where he did actually reside. Such exemption in the adjacent, or separated tract, may come about where the use of such tract and the estate or title of the claimant in the actually occupied tract are legally sufficient so to do. Hinds v. Morgan, 75 Miss. 509, 23 So. 35; King v. Sturges, 56 Miss. 606. And, it is said in these cases that any interest or tenure of the claimant in the actually occupied land, save that of a trespasser or wrongful intruder, will support the claim. However, it is necessary that the claimant own a conveyable estate in the actually occupied land. The statute exempts ". . . the land and buildings *owned* and occupied as a residence by such person, . . ," and the "homestead right is founded on ownership of some assignable interest in the land." Berry v. Dobson, 68 Miss. 483, 486, 10 So. 45; Jones v. Lamensdorf, 175 Miss. 565, 167 So. 624. The requirement that the interest owned must be an assignable estate meets the purpose of the statute, which purpose is to prevent the conveyance of the estate by the husband without the joinder of the wife. If the husband owns no assignable interest in the land, then the statute has no application. In such case there is nothing for the statute

to protect and nothing upon which it can operate. Nor does this requirement run counter to the holding. that a tenant at will may claim the exemption. Such relation is that of landlord and tenant while it continues and a conveyance by the tenant of his interest, while not binding on the landlord if he wills otherwise, is good between the tenant and his grantee. In other words, the estate of the tenant is conveyable, although the landlord does not have to recognize it, as indeed he may not do as to the original tenant. Holbrook v. Young, 108 Mass. 83; Meier v. Thiemann, 15 Mo. App. 307, reversed on other grounds in Meier v. Thieman, 90 Mo. 433, 2 S. W. 435. Now, what estate did Bill Davis own in the residence of Wallace Davis? At most, he was either a gratuitous licensee or lodger, in neither of which cases did he own an assignable estate. 32 A. J., p. 30, Sec. 5; Thompson on Real Property, Sec. 1076, p. 94; 35 C. J. 954, Sec. 11-B. The exclusive control of the property was in Wallace; Bill had only a permissive use. How could Bill Davis convey to another the relation which existed between himself and Wallace Davis and Wallace's residence under the facts of this case? There is no question that the occupied premises constituted the homestead of Wallace. Viewed from a common sense standpoint, how could Bill Davis have a homestead right in Wallace's homestead, there being no co-tenancy? A homestead right cannot be built upon another homestead right. Turner v. Miller, Tex. Civ. App., 255 S. W. 237. If so, how many homesteads can be built upon the first? The holding in Hinds v. Morgan and King v. Sturges, supra, is not contrary to this. There the relation of the claimants to the lands actually occupied, as well as that conveyed and not actually occupied, was different from that existing in the case at bar. It must be kept in mind that the forty acres of land leased in the case at bar had never been actually occupied as a homestead and the property actually occupied by Bill Davis, which was in the home of Wallace Davis, was not attempted to be conveyed.

Appellants urge upon us the beneficient private and public objects and results underlying the policy of homestead exemptions which have been so eloquently expressed by the courts and textwriters in days gone by. We are in hearty accord with these, yet, at the same time, it is not amiss to say that unless such right does in fact exist, its assertion should not be permitted to work a wrong on others.

Suggestion of error overruled and affirmed.

**Sydney Smith, C. J.,** did not participate in this decision.