**In the Matter of Clyde WILLIAMSON, d/b/a Triangle 44 Farms, Debtor.**

**Glen A. STINSON, et al., Plaintiffs-Appellants,**

**v.**

**Clyde E. WILLIAMSON, d/b/a Triangle 44 Farms, Defendant-Appellee.**

**No. 87–4657.**

United States Court of Appeals, Fifth Circuit.

May 16, 1988.

Stratton Bull, Jr., John T. Green, Natchez, Miss., for plaintiffs-appellants.

John R. Kingsafer, Natchez, Miss., for defendant-appellee.

Before GARZA, HIGGINBOTHAM, and SMITH, Circuit Judges.

JERRY EDWIN SMITH, Circuit Judge:

Glen A. Stinson and various members of the Stinson family appeal from a district court order recognizing Clyde E. Williamson's claim to a state homestead exemption in proceeds derived from the sale of real property that had once served as his residence. Because the district court read the Mississippi homestead statute, Miss. Code Ann. § 85-3-21 (Supp.1987), to allow the debtor a maximum exemption irrespective of the source of the proceeds, Williamson was able to avoid the Stinsons', judgment lien in its entirety. Although we agree that Williamson is entitled to claim a homestead exemption in a portion of these proceeds, we read the statute to restrict the source of these funds to the debtor's interest in 160 residential acres. Accordingly, we modify the district court's order as to the amount which Williamson may hold exempt from the liens of his creditors.

I. *Background*

This case comes before us now for a second time on appeal, and a detailed recitation of its facts and procedural history is set out in *In re Williamson,* 804 F.2d 1355, 1356–57 (5th Cir.1986). It will therefore suffice to reiterate only those facts that bear significantly on subsequent proceedings leading to the present appeal.

In April 1978, Williamson moved his family and mobile home onto an 854–acre tract

in Adams County, Mississippi, hereinafter referred to as Courtland Plantation. He acquired the land from Barnett Serio under a land sale contract, and began making annual installment payments both to Serio and to the Federal Land Bank of New Orleans, the latter holding an existing deed of trust encumbering the property.

In March 1982, a state court adjudged Williamson in breach of an unrelated contract and awarded Cloverleaf Cooperative a judgment for the amount of $49,922.10. The Stinsons obtained their separate judgment against Williamson in October 1982, for the amount of $33,500.00. Both judgments were properly enrolled as judicial liens in the order in which they were entered.

On March 1, 1983, Williamson filed for Chapter 11 relief. At that time, he claimed federal exemptions under 11 U.S.C. § 522(b), but did not claim any state-law exemptions. A year later, on March 29, 1984, the bankruptcy court authorized Williamson to assume the partially executory land sale contract in order to liquidate his interest in Courtland Plantation for the benefit of the bankruptcy estate. In this transaction, Serio conveyed all 854 acres of Courtland Plantation to Williamson by warranty deed executed on April 13, 1984. That same day, Williamson conveyed fee in the property to H.L. Brooks while retaining a one-year leasehold in two unspecified acres.[1] The deed provided that the area reserved was intended for Williamson's residential purposes and specifically excluded his mobile home from the conveyance.

On June 1, 1984, Williamson filed an amendment to his exemption schedule, claiming a state homestead exemption in $30,000.00 of the $61,955.99 of net equity derived from the sale of Courtland Plantation. That day, Williamson also filed motions to avoid the Cloverleaf and Stinson judgment liens on the ground that the liens impaired his homestead exemption. The Stinsons objected to Williamson's motion, but Cloverleaf neither filed an objection nor appeared at the hearing before the bankruptcy court to contest the amendment to Williamson's exemption schedule.

In February 1985, the bankruptcy court held $30,000.00 of proceeds from the sale of Courtland Plantation exempt under Mississippi homestead law, Miss. Code Ann. § 85-3-21 (Supp.1987). The district court subsequently reversed on the sole ground that Williamson had been untimely in filing his amendment, thus finding it unnecessary to reach the question whether Williamson qualified for a homestead exemption under state law. A panel of this court reversed and remanded the case to the district court with instructions to determine (1) whether Williamson was entitled to a state homestead exemption as of the date Chapter 11 proceedings commenced, and (2) if so entitled, the extent to which he could avoid the Cloverleaf and Stinson liens pursuant to § 522(f) of the Bankruptcy Code.[2]

On remand, the district court found Williamson qualified for a $30,000.00 homestead exemption pursuant to Miss. Code Ann. § 85-3-21 (Supp.1986), and applied the avoidance formula set forth in *In re Duncan*,[3] a method noted by us with ap-

---

1. Our previous opinion in this case incorrectly describes Williamson's retained interest as two acres in fee simple. *Williamson,* 804 F.2d at 1356.

2. *Williamson,* 804 F.2d at 1362.

11 U.S.C. § 522(f) provides in pertinent part: Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien. . . .

3. 43 B.R. 833 (Bankr.D. Alaska 1984). *See also In re Braddon,* 57 B.R. 677, 679 (Bankr.W.D.N.Y.1986); *In re Princiotta,* 49 B.R. 447 (Bankr.D. Mass.1985); *In re Sajkowski,* 49 B.R. 37 (Bankr. D.R.I.1985).

According to *Duncan,* avoidance of a judicial lien under § 522(f) is a two-step procedure. First, it must be determined whether the debtors have a homestead exemption that is impaired. Next, it must be determined the extent to which the judicial lien creates the impairment. 43 B.R. at 836. To determine whether there is such an impairment, the *Duncan* method requires the following steps:

1. Rank all liens in order of priority (and equity, if any) to the extent of the value of the

proval in deciding the previous appeal.[4] Accordingly, the district court's computations consisted of (1) subtracting the Serio and Federal Land Bank mortgage claims from the total sale price of the land ($877,-000.00—$815,055.01 = $61,944.99); and (2) subtracting the full homestead exemption from Williamson's net equity, leaving the remainder available to satisfy the claims of the lien creditors ($61,944.99—$30,000.00 = $31,944.99). The Cloverleaf lien, with priority over the Stinson lien, was thus partially avoided in the amount of $17,-977.11 ($49,922.10—$31,944.99), and the Stinson lien was avoided in its entirety.

The Stinsons now argue on appeal that the district court misapplied Mississippi law in determining Williamson's entitlement to a homestead exemption. The Stinsons further argue that even if Williamson was entitled to claim a homestead exemption at the time Chapter 11 proceedings were filed, he waived such claim by failing to assert it prior to the sale of Courtland Plantation.

## II. Qualification for a Homestead Exemption

Miss. Code Ann. § 85–3–21 (Supp.1987) sets forth the qualifications for claiming a homestead exemption as well as the rights

> property. (Any liens or portion of a lien in excess of the value of the property will be an unsecured claim under § 506.)
> 2. Subtract the gross amount of the homestead exemption provided by law from the value of the property.
> 3. From the remainder left from step two, subtract each lien, one at a time, beginning with the most senior lien, as ranked in step one, until the judicial lien is reached. Then subtract the judicial lien. To the extent that all or any portion of a judicial lien exceeds the remainder derived from step two (*i.e.*, is not part of the remainder), it is voidable as it impairs the exemption.
>
> 43 B.R. at 838. The district court deviated from this formula to account for the Mississippi rule, which subordinates the homestead exemption to any purchase-money mortgage claims encumbering the property. *See* Miss. Code Ann. § 85–3–21; *Hall v. Panola County Bk.*, 412 So.2d 238, 240 (Miss.1982). Accordingly, the court subtracted the amount of such claims from the value of the property before proceeding to *Duncan*'s second step.

**4.** *Williamson*, 804 F.2d at 1362 n. 10.

and immunities appertaining thereto. It states in pertinent part as follows:

> Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure and sale, under execution or attachment, the land and buildings owned and occupied by him, or her, but the quantity of land shall not exceed one hundred sixty (160) acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of thirty thousand dollars ($30,000.00)....

In construing the homestead statute, the Mississippi Supreme Court has established a rule of construction that requires resolution of doubt or ambiguity in the exemptionist's favor.[5] The concern of the homestead exemption provision is to protect the entire family from the misfortunes or imprudence of its primary breadwinner,[6] referred to in the statutory language as "householder."[7] Accordingly, the Court has construed an earlier version of the homestead statute to permit exemption of proceeds from the voluntary sale of a homestead "in all circumstances."[8]

This exemption is not dependent, as in some other states, on the vendor's continued status as a homeowner, or on his intention to acquire another homestead with the proceeds.[9] The thrust of the homestead

**5.** *See, e.g., Dogan v. Cooley*, 184 Miss. 106, 185 So. 783, 790–91 (1939) (en banc); *Daily v. Gulfport*, 212 Miss. 361, 54 So.2d 485, 487 (1951) (en banc); *Davis v. Lammons*, 246 Miss. 624, 151 So.2d 907, 909–10 (1963).

**6.** *Dogan*, 185 So. at 790–91.

**7.** *Moore v. Sykes' Estate*, 167 Miss. 212, 149 So. 789, 790 (1933) (defining householder as the head or master of a family, responsible for keeping it together and providing for it).

**8.** *Davis*, 151 So.2d at 909–10; *Patterson v. Adams*, 245 So.2d 13, 15 (Miss.1971). *See also* 40 Am.Jur.2d *Homestead* § 48 (1968) (same rule applies where sale is involuntary).

**9.** *Davis*, 151 So.2d at 909. The Stinsons argue that Williamson's failure to claim a homestead exemption from state tax liability for the fiscal years 1979–83 evidences his intent not to regard Courtland Plantation as his homestead. Under Mississippi law, however, the debtor's mere occupancy and ownership, coupled with use consistent with homestead purposes, is enough to impress the land with homestead status.

law, therefore, has not been merely to protect the home from forced sale, but also to withdraw from the reach of creditors property of the debtor as a source of revenue for the support of himself and his family.

The primary issue the Stinsons raise in their appeal is whether proceeds from the sale of the Courtland Plantation can be properly considered proceeds from the sale of a homestead. The Stinsons read the homestead statute to require that a householder claim the exemption in both land *and* buildings in order to qualify for taking any exemption at all. Although they concede Williamson occupied the property when he filed for Chapter 11 relief, they stress the fact that he sold only the land, but not his mobile home, and thus conclude the proceeds cannot by definition be derived from the sale of a homestead.

■ Bound as we are to construe the homestead statute to protect the debtor's investment within statutory limits, we draw a contrary conclusion from alternative premises. As Mississippi courts recognize, the "controlling factor" in determining the homestead character of any given parcel is "whether or not the property is devoted to homestead purposes...." [10] Certainly in the usual situation, the householder will have owned and sold the family home as part of the realty. However, nothing in the statute compels or even suggests to us that "land and buildings" as used therein represents anything other than cat-

egories of property the householder is entitled, within limits, to hold as exempt from execution or attachment. The householder need not own, and thus need not sell, both land *and* buildings to qualify for an exemption in the proceeds so long as the property sold was used for homestead purposes.

■ In a similar vein, the Stinsons contend that because Williamson retained and continued to reside on a two-acre leasehold covering a portion of the property which he had occupied prior to the sale, he cannot be said to have sold homestead property, statutorily defined as "land and buildings owned and occupied as a residence...." [11] That is, since Williamson continued to reside on the same land and in the same building [12] as before, nothing changed by the sale; the essential attributes of the homestead did not pass to the buyer and, thus, as the Stinsons conclude, the proceeds are not exempt.

■ We disagree, however, with the main premise of this argument—that the homestead character cannot follow a partial conversion of homestead property into money. It is clear under a companion statute, Miss. Code Ann. § 85–3–23 (Supp. 1987), that the householder may hold exempt insurance proceeds covering damage to homestead property *in addition to* the remnants of the property itself.[13] We see no reason for treating a partial liquidation by sale any differently. When Williamson

---

**10.** *Shows v. Watkins,* 485 So.2d 288, 291 (Miss. 1986) (quoting *Horton v. Horton,* 210 Miss. 116, 48 So.2d 850, 855 (1950)). *Horton* applies the homestead purposes test to determine the homestead character of a parcel non-contiguous with that on which the dwelling house was situated. *Id.* This ruling supports our holding insofar as the purpose for which the land is used, rather than the presence of a permanent structure thereon, governs the outcome.

**11.** Miss. Code Ann. § 85–3–21 (Supp.1987).

**12.** Without citing authority, the Stinsons assert the naked proposition that a mobile home fails to qualify as a "building" under Mississippi's homestead statute. The homestead character of Williamson's mobile home, however, is irrelevant for two reasons: first, because Williamson makes no claim of exemption in the mobile home; and second, because we hold that a per-

manent structure on property used for residential purposes is not a necessary precondition of a valid homestead exemption in proceeds of the sale of such property. We do note, however, that as a general rule a house trailer is a type of property sufficient to support a homestead where it is affixed to the ground. *See* 40 Am.Jur.2d *Homestead* § 30 (1968), and cases cited therein.

**13.** Miss. Code Ann. § 85–3–23 (Supp.1987) provides in pertinent part: "Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure or sale under execution or attachment the land and buildings owned and occupied as a residence by such person, *also the proceeds* of any insurance, fire or otherwise, on any such buildings destroyed or damaged by fire, tornado or otherwise, not to exceed in value ... $30,000.00 ..." (emphasis added).

sold Courtland Plantation, he liquidated practically the entire fund he had invested in a living space for his family, and so actually a great deal changed by reason of the sale. Since the homestead statute must be construed to protect this fund within specified limits, it is immaterial that Williamson has remained on the land as a lessee.[14]

■ The Stinsons challenge Williamson's qualification for a homestead exemption on two additional grounds: First, citing *Jones v. Lamensdorf,* 175 Miss. 565, 576, 167 So. 624, 626 (1936), for the proposition that the homestead right must be predicated on "ownership of some assignable interest in land," the Stinsons argue that Williamson's interest under the land sale contract could not be assigned at the time he filed for Chapter 11 relief. We disagree, noting that the terms of the land sale contract expressly applied to Williamson's "successors and/or assigns." Furthermore, the requirement that the interest owned must be assignable meets the purpose of the homestead statute where, as here, the interest in question is subject to levy by a creditor.

If the householder owns no assignable interest in the land, then the statute does not apply because there is nothing for it to protect.[15] Under Mississippi law, the vendor under an executory contract for the sale of land is treated in equity as holding legal title in trust for the purchaser.[16] Since, moreover, a creditor can execute against the purchaser-beneficiary's interest while the title is held in trust,[17] it follows that Williamson's interest in Courtland Plantation was eligible for homestead pro-

tection at the time bankruptcy proceedings were instituted.

■ The Stinsons' other ground for contesting Williamson's eligibility for a homestead exemption is the failure on his part to designate the specific 160 acres from which the proceeds he now claims as exempt would be derived. Although this omission figures into our analysis of the valuation of his exemption, it has no bearing on the householder's qualification to declare an exemption *per se* in proceeds from the sale of a homestead.[18]

III. *Waiver*

■ The Stinsons argue in the alternative that even if Courtland Plantation was capable of supporting a homestead exemption when Williamson entered bankruptcy, he waived his homestead rights in the proceeds by not making his claim until after the sale was consummated. The Stinsons rely heavily on language quoted from *Woods v. Bowles,* 92 Miss. 843, 848, 46 So. 414 (1908), which held that "a Judgment Debtor may successfully interpose his claim of exemption as against the execution creditor at any time before the actual sale...."

The Stinsons infer from this language that the homestead exemption is waived whenever it is not asserted prior to the sale of a homestead. We decline, however, to read this proposition so broadly, since the factual context in which it was enunciated is clearly distinguishable. In *Woods*, the debtors claimed their exemption in rents and profits produced by homestead property, not in proceeds from the sale of such property.[19] The right to collect rents and profits is an incident of land ownership,

---

**14.** The Stinsons do not raise whether Williamson's retained leasehold interest should be considered proceeds from the sale of homestead property, and we thus need not decide whether Williamson's exemption in the cash proceeds should be offset by the value of the leasehold.

**15.** *Davis v. Davidor,* 200 Miss. 657, 27 So.2d 371, 373 (1946).

**16.** *Stabiler v. Webb,* 375 So.2d 980, 984 (Miss. 1979).

**17.** Miss. Code Ann. § 89–1–43 (1972).

**18.** *Cf. Thompson v. Dyess,* 218 Miss. 770, 67 So.2d 721, 723–24 (1953) (where householder failed specifically to designate 160 acres that constituted homestead out of 300–acre tract covered by deed, lower court should have appointed commissioners under applicable statute to make allotment); *see also Joe T. Dehmer Distributors, Inc. v. Temple,* 826 F.2d 1463, 1469 (5th Cir.1987).

**19.** *Woods,* 46 So. at 414.

and since the homestead right is personal to the debtor and is thus inalienable,[20] it follows that once the land was sold, the debtors would relinquish any homestead right to claim an exemption in *that property.* [21] *Woods* does not hold that the debtors would also forego their right to claim their exemption in the *proceeds* of a sale, which proceeds would be subject to their immediate personal possession and thus be subject to rights and immunities personal to them. Nor have the Stinsons cited such a case to us.

We also note that the proposition relied on by the Stinsons emanates from a line of cases that apply it differently from the analysis urged by the Stinsons. These cases have declared that a landowner is entitled to claim a homestead exemption even if execution has been levied on the property, so long as the landowner *qualifies* for the exemption before the judgment lien is foreclosed.[22] According to one commentator, the policy behind this rule is tied to that underlying the homestead laws:

> Since the purpose of the exemption is to allow a property owner to hold land for the support of himself and his family, the fact that the claimant qualifies for the exemption after a judgment has been rendered against him is immaterial because the purpose of the exemption exists just as much after the judgment as before. The rights of the creditor are not impaired if the landowner was not qualified for a homestead exemption before a judgment, but is afterwards, because even if a lien exists against the property of a claimant, the creditor's rights are limited by the statutory restriction that if he [,the creditor,] does not sell the property before the claimant qualifies for the exemption, it becomes exempt and cannot be sold.[23]

Likewise in the present case, because the Stinsons were barred first under state law and later under the automatic stay from foreclosing their judgment lien, they have not in any way been prejudiced by Williamson's asserting an exemption in the proceeds. As the court below noted, because "the proceeds of the sale have been held by the bankruptcy trustee, the position of no party has changed since the original Chapter 11 filing. The judgment creditors have not been harmed and no fraud has been perpetrated on the creditors." Op. at 5. Thus, we conclude Williamson waived nothing by timing his claim as he did.[24]

## IV. *Valuation of the Homestead Exemption*

Pursuant to the Mississippi homestead statute, the quantity of land held as exempt "shall not exceed one hundred sixty (160) acres, nor the value *thereof* ... the sum of thirty thousand dollars ($30,000.00)...." [25] In *Kimbrough v. Powell*, 143 Miss. 498, 108 So. 498 (1926), the Mississippi Supreme Court construed this language to restrict the source of value eligible for exemption to the debtor's interest in 160 acres, even though this interest may

---

**20.** 40 Am.Jur.2d *Homestead* § 114 (1968).

**21.** There is authority in Mississippi, contrary to the general rule, that a conveyance or incumbrance of homestead property while judgments are in force against the owner passes title to the grantee or mortgagee subject to the lien of the judgments. *See Whitworth v. Lyons,* 39 Miss. 467 (1860).

**22.** *See, e.g., Trotter v. Dobbs,* 38 Miss. 198 (1859) (cited by *Woods,* 46 So. at 414); *Dulion v. Harkness,* 80 Miss. 8, 31 So. 416 (1902) (cited by *Woods,* 46 So. at 414); *see also Irwin v. Lewis,* 50 Miss. 363 (1874); *Lessley v. Phipps,* 49 Miss. 790 (1874).

**23.** Comment, *Homestead Exemption Law in Mississippi as It Affects the Claims of Creditors,* 36 Miss.L.J. 69, 73–74 (1964).

**24.** We are further supported in our holding by the absence in Mississippi of a formal procedure for declaring one's homestead prior to a claim of exemption. According to Miss. Code Ann. § 85–3–25 (1972), "Any citizen entitled to a homestead and desiring to select the same and obtain the advantages of such selection, *may* make a declaration thereof ..." (emphasis added); *see also Shows,* 485 So.2d at 291 ("The homestead exemption is voluntary, not obligatory."); *Joe T. Dehmer Distributors, Inc. v. Temple,* 826 F.2d 1463, 1469 (5th Cir.1987).

**25.** Miss. Code Ann. § 85–3–21 (Supp.1987) (emphasis added).

happen to be worth less than the maximum exemption allowed under the statute.

In *Kimbrough,* the householder owned an undivided one-sixth interest in 640 acres of homestead property and claimed as exempt her entire interest in the parcel. Her claim was for less than the statutory maximum exemption (then $3,000.00), but the court held that only her interest in 160 acres could be held as exempt from the claims of her creditors, stating:

> A debtor can only claim and hold as a homestead not exceeding 160 acres of land, of the value, including improvements, of not exceeding $3,000, and a debtor who asserts a homestead exemption in an estate in common which exceeds 160 acres in quantity has no floating claim to an exemption of his interest in the entire estate. His exemption in such estate is limited to a homestead of the proper quantity, as well as value, and if the value of the debtors' interest in the 160 acres constituting the homestead happens to be worth less than $3,000, this fact does not entitle him to an exemption in the remainder of the estate.[26]

■ In the present case, the district court valued Williamson's exemption at the statutory maximum of $30,000.00 without first determining whether his equity interest in a specific 160–acre parcel of the 854 acres comprising Courtland Plantation was worth that amount or more. However, we need not remand for such a determination, because any benefit which Williamson might have derived therefrom was waived by his failure to specify the particular acreage constituting his homestead at the time he amended his exemption schedule.

Accordingly, for purposes of this appeal, we will assume the fungibility of all 854 acres comprising Courtland Plantation, with Williamson's equity evenly distributed throughout. His interest in 160 acres will thus be pro-rated according to his total equity interest in the entire tract. This value will be computed by (1) establishing a coefficient representing the proportion of total acreage to the statutory maximum allotment (160 divided by 854 = .1874), and (2) by multiplying this coefficient by the dollar value of Williamson's total equity interest (.1874 × $61,944.99 = $11,608.49). Consequently, Williamson is entitled to hold as exempt $11,608.49 of proceeds of the sale of Courtland Plantation.

Applying this revised figure to the *Duncan* avoidance formula used by the district court, we note that of the $61,944.99 representing Williamson's total net equity, $50,-336.50 is available to satisfy the claims of his judgment lien creditors ($61,944.99—11,608.49). The Cloverleaf lien must be satisfied in full ($50,336.40—$49,922.10 = $414.40), leaving the remainder to satisfy in part the Stinson lien. The Stinson lien is thus avoided by the amount of $33,085.60 ($33,500.00—$414.40).

■ In their appeal, the Stinsons argue that the district court erred under state law in not subordinating the Cloverleaf lien to their own, pointing to the fact that Cloverleaf failed to object to Williamson's motion to avoid Cloverleaf's judgment lien.[27] This argument is specious, because the Stinsons make no showing of reliance on Cloverleaf's failure to assert its rights. Further, as stated by the district court, this is not the sort of situation contemplated by Miss. Code Ann. § 11–7–193 (1972), which provides that a junior lienholder may gain priority over its senior who fails to protect itself within ten days' notice of the junior's intent to execute. The Stinsons merely gave Cloverleaf notice of their intent to object to Williamson's amendment to his exemption schedule.

## V. *Conclusion*

For the foregoing reasons, the district court's order finding Williamson entitled to a homestead exemption in a portion of the proceeds in question is AFFIRMED. However, the amount by which the district court permitted Williamson to avoid his judgment lien creditors is MODIFIED to

---

26. *Kimbrough,* 108 So. at 499. *See also Lewis v. White,* 69 Miss. 352, 13 So. 349, 350 (1891).

27. Neither party raises whether Cloverleaf so waived any rights under federal law, and thus we offer no opinion on this issue.

the extent stated in this opinion. In all other respects, the order of the district court is AFFIRMED, and this matter is REMANDED to the district court for further proceedings consistent with this opinion.