MARY E. MOODY ET AL. *v.* WEBSTER E. MOODY.

1. HOMESTEAD.  *Value.  Increase in value.  Partition.  Code* 1892, § 1553.
      *Widow's rights.*

   Under Code 1892, § 1553, providing that where a decedent leaves
      a widow, to whom, with others, his exempt property descends,
      the same shall not be subject to partition so long as it is occu-
      pied by the widow and during her widowhood, without her con-
      sent, a surviving widow is entitled to occupy the homestead as
      it existed in the lifetime of the husband without reference to its
      value.

2. SAME.  *Value.  Creditors.  Heirs.*

   The limit of value placed by law on the amount of land which
      can he held as an exempt homestead is solely for the protection
      and benefit of creditors, and has no place in a consideration of
      the rights of a surviving widow to the use and occupation of the
      homestead as against the other heirs of the deceased exemp-
      tionist.

3. SAME.  *Estate of decedent.  Time when value determined.*

   If, at the death of the owner of a homestead, it does not exceed
      the full limit of value allowed, a subsequent appreciation in
      value, no matter how great, does not give creditors of the
      decedent any right to subject to their claims the excess over
      the full amount allowed.

FROM the chancery court of Lauderdale county.

HON. JAMES L. MCCASKILL, Chancellor.

Webster E. Moody, the appellee, was complainant in the
court below; Mary E. Moody and others, appellants, were de-
fendants there.

Webster E. Moody alleged in his bill for partition of land
that E. F. Moody died in 1900, intestate, seized and possessed
of his residence and home, described as lots five and six of
block sixteen in the city of Meridian; that said decedent left
surviving him as his heirs, Mrs. Mary E. Moody, his widow,
complainant, his, son, and five other children, defendants; that

on the lots were situated the residence and other improvements; that the two lots and the residence on them exceeded in value the exemption allowed by law; that one of the lots was unoccupied, and prayed that the court should grant a decree to sell the unoccupied lot for partition of the proceeds; and that the property was not susceptible of division and partition in kind. *Pro confesso* decrees were taken against all the defendants except Mrs. Mary E. Moody, the widow, who answered, alleging that the property sought to be sold for partition was at the time of the death of her husband exempt property; that she was then living in the residence on said property, using and occupying it as her home; that she was still a widow, and had never consented to the sale of said property for partition; that the lot sought to be sold constituted a part of the exempt property, and was not subject to sale for partition under Code 1892, § 1553. The testimony showed that the lot sought to be sold was a part of the homestead during the life of defendant's husband, and was still so, and that the lot on which the residence stood, not asked to be sold, was worth $2,000, or more, at the time the testimony was taken. From a decree authorizing the sale of the lot as prayed for in the bill for partition, Mrs. Mary E. Moody appealed to the supreme court.

*Miller & Baskin*, for appellants.

Under Code 1892, § 1551, it is provided that the property, real and personal, exempt by law from sale under execution or attachment, shall, on the death of the husband or wife owning it, descend to the survivor of them, and to the children of the decedent as tenants in common, and Code 1892, § 1553, provides: "Where a decedent leaves a widow to whom with others exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood, so long as it is occupied or used by the widow, unless by her consent." This latter section has not been construed by the supreme court of our state with respect to the

point raised in this suit, so far as we know; neither the case of *Middleton* v. *Claughton,* 77 Miss., 131, nor the case of *Martin* v. *Martin,* 84 Miss., 553 (s.c., 36 South. Rep., 523), construe or interpret this statute, as to the right of the widow to hold, occupy, and use, and prevent the sale for partition of the property where it is not worth more than is exempted under the laws of our state. The public policy of these statutes, however, are declared in each of the cases hereinbefore stated, notably in the case of *Martin* v. *Martin.* This statute giving to the widow the right to hold and use during her widowhood the exempt property belonging to her deceased husband was intended to give her a home and sustenance and support during her widowhood, and the statute laws are express prohibition upon the sale of the property for partition. We cannot conceive how the value of exempt property can be material in view of this statute providing that the property shall not be sold for partition during her widowhood without her consent.

It was clearly intended that, regardless of the value of the homestead, so far as the question of partitioning the same is concerned, the widow should have the right to invoke the protection given her under Code 1892, § 1553, and to prevent any sale or division of the property descending as exempt property to herself and to her children.

*F. V. Brahan,* for appellee.

From a careful perusal of the pleadings and testimony in this case, the court will observe that the controversy in the case is between the complainant and the widow, Mrs. Moody, only, and she invokes Code 1892, § 1553.

That section says: Where the decedent leaves a widow, and his exempt property descends, it shall not be partitioned during her widowhood so long as it is occupied or used by the widow, unless she consents.

The obvious purpose of this statute is to provide a home

for the widow and to give her the use of the decedent's exempt property. 12 Am. & Eng. Ency. Law, 75 and 77. The question then confronts us: What is the exempt property of a decedent in a city? This is answered by sec. 1971 of the code, which provides that the value of said homestead exemption shall not exceed $2,000. 15 Am. & Eng. Ency. Law, 699, and cases cited in note, p. 700; see also p. 533, same volume.

The only decision of this court involving sec. 1553 of the code that I have found is in 77 Miss., 131, *Middleton* v. *Claughton,* which does not control this case.

This good lady still has the house, worth more than $2,000; and the decree is right in directing the surplus ground sold for partition, and it should be affirmed.

It is idle to argue that in a populous city a good building cannot be placed on a forty-seven-foot lot, and the proof shows it can, and that a fair value of the vacant lot is about $1,500.

TRULY, J., delivered the opinion of the court.

The homestead which is reserved for the benefit of the head of every family resident in this state comprises "the land and buildings owned and occupied as a residence by such person" if in a city or town, or, if in the country, it shall consist of the land and building owned and occupied as a residence, but the quantity of land shall not exceed one hundred and sixty acres. The object of the exemption law is to insure that the families of the residents of this state shall never by financial misfortune or stress of circumstances be deprived of their homesteads, and the desired end is sought to be secured by providing that no creditor shall be permitted to wrest from the family the dwelling place. This has been the law and the recognized public policy of this state for many years. In 1892, recognizing the fact that after the death of the head of the family— "the breadwinner"—the homestead was often forced upon the market for sale for purposes of partition between the surviving

widow and the children, and that thereby the beneficent intent of the homestead law was often defeated, Code 1892, § 1553, was by the legislature, in the exercise of a most enlightened wisdom, adopted. The prime object of the law is to preserve the homesteads of the citizens of this commonwealth; but, in order to prevent this protective provision from being converted into a means of defrauding creditors of their just rights, a limitation as to value was placed on the amount which could be claimed as exempt. In order to insure stability of residence and to encourage the building up and improvement of homes, the legislature provided that, where the head of the family would in a formal manner identify and select the homestead which he intended to claim, he might increase the value of that home without risk of having the same subjected to seizure for debt to an amount not to exceed $3,000. The limit of value thus placed upon the total exemption permitted is merely incidental to the main object, the preservation of the homes. At the death of the head of the family, as in his lifetime, the excess of the value of the homestead above the amount stated is liable to be subjected to the payment of the debts of the decedent. But before a creditor of the decedent could force a new allotment when the homestead is susceptible of division, or a sale for the purpose of subjecting the excess of the proceeds to his debts, it would be incumbent on the creditor to establish that at the date of the death of the decedent the value of the homestead exceeded the statutory exemption. "His death is made by the statute the point of time at which the right of the heir at law is to be measured, and a subsequent appreciation or depreciation in value would not change the allotment." *Parisot* v. *Tucker,* 65 Miss., 442 (4 South. Rep., 113). If at the date of the death of the owner of the homestead the allotment should be worth the full limit of value allowed, a subsequent depreciation would not entitle the heirs to claim additional land. If, on the other hand, at the death the homestead allotment did not exceed in value the amount exempted,

a subsequent appreciation would give the creditor no right to subject the excess. This would be fatal to the cause of appellee in the instant case, even though he .occupied the attitude and was entitled to the rights of a creditor of the estate. The record discloses no evidence even tending to show that at the date of the death of E. S. Moody in January, 1900, the value of the homestead exceeded the statutory limit.

But we do not base our decision on that consideration. The limit of value placed by law on the amount of land which can be held as exempt is solely for the protection and benefit of creditors—to prevent unreasonable amounts from being held exempt from execution to the prejudice of those to whom just debts might be due. But the question of value has no place in a consideration of the rights of the surviving widow to the use and occupancy of the homestead. The purpose of the legislature was to protect the surviving widow, to whom, with others, the exempt property might descend, by securing to her during her widowhood the undisturbed use and occupancy thereof. A law designed to establish a beneficent public policy must be liberally construed, in order to completely effectuate the legislative purpose. So we hold that the value of the homestead is not material in passing on the rights of the surviving widow under sec. 1553. She is entitled to continue to use and occupy the homestead. · No matter how elegant or costly, be it ever so humble, it is still the home to her, and to it she has been granted rights which can neither be interfered with nor abridged. So long as she remains a widow, her rights are absolute. She cannot be called on to account for the use and occupancy, nor forced to purchase the rights, of her co-tenants; nor is the property subject to partition in kind, nor to ·sale for the purpose of dividing the excess of the proceeds. If this were not true, it might often happen that a home worth slightly more than the statutory limit would be forced on the market, and the widow compelled to abandon the home of a lifetime, beautified and made attractive by the labor of her hands, en-

deared by a thousand tender memories of happier days, and would have naught left for the support of herself, and perhaps her helpless minor children, save the use of the $2,000 exempted by statute. This view of the law is too narrow and restricted. The home as it existed in the lifetime of the husband is preserved to the widow. Her right to its use and occupancy without molestation is inviolable, and the law will not permit the care and attention which she devoted to the building up and beautifying of that home, thus increasing its desirability and value, to be used as instruments for its destruction after the head of the family has been by death removed.

*Reversed, and decree here dismissing the bill.*