### In re Cassie OSBORNE and Doris Osborne, Debtors.

### Bankruptcy No. 90–10259.

United States Bankruptcy Court, N.D. Mississippi.

April 25, 1990.

Solomon C. Osborne, North Mississippi Rural Legal Services, Greenwood, Miss., for Cassie Osborne and Doris Osborne.

Arnold F. Gwin, Greenwood, Miss., for Willie Bullins.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the Court is a motion filed by the debtors pursuant to 11 U.S.C. § 522(f)(1) to avoid a judicial lien held by Willie Bullins; response to said motion having been filed by Bullins; and the Court having heard and considered same, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

### II.

The facts in this proceeding are largely undisputed and are set forth in the following enumerated paragraphs:

1. As a result of a complaint for specific performance, Willie Bullins received a judgment, dated August 18, 1987, against Cassie Osborne, *Jr.*, in the Chancery Court of Leflore County, Mississippi, Cause No. 24,449, in the sum of $85,000.00, plus interest at the rate of 8% per annum.

The Court required Bullins to execute a warranty deed in favor of Osborne, Jr., to be held by the Chancery Clerk pending payment of the judgment. Once the judgment was satisfied, the warranty deed was to be delivered to Osborne, Jr.; but, in the interim, Bullins remained in possession of the premises. A judicial lien was awarded to Bullins, against the property described in the warranty deed, to secure said payment.

2. Cassie Osborne, Jr., is the son of the debtors herein.

3. The Leflore County Chancery Court decision was appealed to the Mississippi Supreme Court where it was subsequently affirmed.

4. As a part of the appellate process, the debtors executed a supersedeas bond as sureties in favor of Bullins in the penal sum of $60,000.00. When the Chancery Court judgment was affirmed, the Mississippi Supreme Court, by order dated January 17, 1990, awarded judgment against *both* debtors in the sum of $60,000.00.

5. The debtors filed their voluntary Chapter 7 bankruptcy case on January 31, 1990.

6. The debtors indicated that they owned as tenants by the entirety with rights of survivorship approximately 60 acres of real property in Carroll County, Mississippi, and approximately 35 acres of real property in Leflore County, Mississippi. All of this property was occupied and claimed by the debtors as their homestead. Prior to the filing of this bankruptcy case, based on the order of the Mississippi Supreme Court, Bullins levied execution against this property, but the execution sale was not completed.

7. Cassie Osborne, Sr., is now deceased, having departed this life on March 2, 1990.

### III.

The first issue concerns the application of § 91–1–23, Miss.Code Ann., to this proceeding, particularly as it interfaces with § 85–3–21, Miss.Code Ann. These sections respectively provide as follows:

§ 91–1–23. Exempt property not to be partitioned in certain cases.

Where a decedent leaves a widow to whom, with others, his exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood as long as it is occupied or used by the widow, unless she consent. Likewise, where a decedent leaves a widower to whom, with others, her exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during the period of his being a widower as long as it is occupied or used by the widower, unless he consent.

Since predecessor sections to § 91–1–23 appear in the cases quoted subsequently in this Opinion, they are noted as follows: Codes, 1892, § 1553; 1906, § 1659; Hemingway's 1917, § 1391; 1930, § 1412; 1942, § 478; Laws, 1950, ch. 346.

§ 85–3–21. Homestead exemption—land and buildings.

Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure or sale, under execution or attachment, the land and buildings owned and occupied as a residence by him, or her, but the quantity of land shall not exceed one hundred sixty (160) acres, nor the value thereof, inclusive of improvements, save as hereinafter provided, the sum of thirty thousand dollars ($30,000.00); provided, however, that in determining this value, existing encumbrances on such land and buildings, including taxes and all other liens, shall first be deducted from the actual value of such land and buildings. But husband or wife, widower or widow, over sixty (60) years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not residing therein.

The predecessor sections are noted as follows: Codes, Hutchinson's 1848, ch. 62, art. 17(1); 1857, ch. 61, art. 281; 1871, § 2135; 1880, § 1248; 1892, § 1970; 1906, § 2146; Hemingway's 1917, § 1821; 1930, § 1765; 1942, § 317; Laws, 1938, ch. 125; 1950, ch. 360; 1970, ch. 323, § 1; 1979, ch. 447, § 1, eff from and after July 1, 1979.

(Further citations of Code sections in this Opinion shall refer to Miss.Code Ann. unless specifically noted otherwise.)

■ Succinctly stated, the most critical issue in the instant proceeding is whether § 91–1–23 allows Mrs. Osborne, as the surviving widow, to prevent the execution of Bullins' judgment lien against that part of her homestead property which is not protected by the exemption allowance set forth in § 85–3–21. The answer is no.

When the value of the homestead property is less than the amount of the exemption, it is abundantly clear that there can be no partition of or execution against the property to satisfy a creditor's non-consensual claim which is *exclusively* against the deceased spouse and not the surviving spouse. In the instant proceeding, resolving this issue is simpler because the judgment in favor of Bullins is against both the deceased and the surviving spouse.

It appears that the value of the Osborne property exceeds the $30,000.00 homestead exemption, although the total acreage is considerably less than the statutory limit of 160 acres. Mrs. Osborne contends that § 91–1–23 prevents Bullins from executing against and selling any portion of her homestead property during her lifetime as long as she resides as a widow on the property, regardless of the amount of the homestead exemption allowance. Several decisions of the Mississippi Supreme Court have touched on this question, but no opinion has addressed head-on the question of whether a creditor, who has a claim exclusively against the deceased spouse, can levy execution and sell that portion of the homestead property which exceeds the value of the statutory homestead exemption and which has vested in the surviving spouse. There is language in several opinions that implies that § 91–1–23, as it inter-

faces with § 85-3-21, is not applicable to the creditors of the deceased under these circumstances. The Court appeared to specifically reach this precise conclusion, but then added subsequent language that tended to obscure the conclusion. A prime example is *Moody v. Moody*, 86 Miss. 323, 38 So. 322 (1905), a case cited repeatedly in subsequent decisions, where the Court stated:

> ... The object of the exemption law is to insure that the families of the residents of this state shall never by financial misfortune or stress of circumstances be deprived of their homesteads, and the desired end is sought to be secured by providing that no creditor shall be permitted to wrest from the family the dwelling place. This has been the law and the recognized public policy of this state for many years. In 1892, recognizing the fact that after the death of the head of the family—"the breadwinner"—the homestead was often forced upon the market for sale *for purposes of partition between the surviving widow and the children*, and that thereby the beneficent intent of the homestead law was often defeated, section 1553, Code 1892, was by the Legislature, in the exercise of a most enlightened wisdom, adopted. The prime object of the law is to preserve the homesteads of the citizens of this commonwealth; *but, in order to prevent this protective provision from being converted into a means of defrauding creditors of their just rights, a limitation as to value was placed on the amount which could be claimed as exempt.* In order to insure stability of residence and to encourage the building up and improvement of homes, the Legislature provided that, where the head of the family would in a formal manner identify and select the homestead which he intended to claim, he might increase the value of that home without risk of having the same subjected to seizure for debt to an amount not to exceed $3,000. The limit of value thus placed upon the total exemption permitted is merely incidental to the main object, the preservation of the homes. *At the death of the head of the family, as in his lifetime, the excess of the value of the homestead above the amount stated is liable to be subjected to the payment of the debts of the decedent.* But before a creditor of the decedent could force a new allotment when the homestead is susceptible of division, or a sale for the purpose of subjecting the excess of the proceeds to his debts, it would be incumbent on the creditor to establish that at the date of the death of the decedent the value of the homestead exceeded the statutory exemption.... (Emphasis added.)

*Id.* 38 So. at p. 323.

At this point, it appears that § 1553 of the 1892 Code, one of several predecessors of § 91-1-23, would not prevent a creditor from levying against that portion of the homestead property which exceeded the exemption allowance.

The *Moody* case, however, can be distinguished from the proceeding now before this Court because the value of the Moody homestead property did not exceed the value of the statutory exemption, to-wit:

> ... The record discloses no evidence even tending to show that at the date of the death of E.S. Moody in January, 1900, the value of the homestead exceeded the statutory limit.

*Id.* 38 So. at p. 323.

To sprinkle a bit of ambiguity on the issue, the Court went on to say:

> But we do not base our decision on that consideration. *The limit of value placed by law on the amount of land which can be held as exempt is solely for the protection and benefit of creditors—to prevent unreasonable amounts from being held exempt from execution to the prejudice of those to whom just debts might be due. But the question of value has no place in a consideration of the rights of the surviving widow to the use and occupancy of the homestead.* The purpose of the Legislature was to protect the surviving widow, *to whom, with others, the exempt property might descend,* by securing to her during her widowhood the undisturbed use and occupance thereof.

A law designed to establish a beneficent public policy must be liberally construed, in order to completely effectuate the legislative purpose. So we hold that the value of the homestead is not material in passing on the rights of the surviving widow under section 1553. She is entitled to continue to use and occupy the homestead. No matter how elegant or costly, be it ever so humble, it is still the home to her, and to it she has been granted rights which can neither be interfered with nor abridged. So long as she remains a widow, her rights are absolute. She cannot be called on to account for the use and occupancy, nor forced to purchase the rights of *her co-tenants*, nor is the property subject to partition in kind, nor to sale for the purpose of dividing the excess of the proceeds. (Emphasis added.)

*Id.* 38 So. at p. 323.

Using its own crystal ball, this Court is of the opinion that the Mississippi Supreme Court concluded that the predecessor to § 91-1-23 would not preclude a creditor from satisfying a nonconsensual debt against the value of property that exceeded the exemption allowance. Of course, the value of the property up to the exemption allowance would be protected. This Court is also of the opinion that *Moody* is authority for the conclusion that value is a non-issue, insofar as § 91-1-23 is concerned, when the rights of co-tenants, not creditors, is concerned.

Ironically, the *Moody* decision seemed to recognize and hold inviolate the exemption limitation of 160 acres while it said the value limitation was of no consequence. This incongruity was perceived by Presiding Justice Patterson in his dissenting opinion in *Stockett v. Stockett*, 337 So.2d 1237 (Miss.1976), a case touching on this same issue which will be discussed subsequently.

A case, which cited *Moody* with approval, is *Horton v. Horton*, 210 Miss. 116, 48 So.2d 850 (1950). In that case, the Court held that a surviving widow was entitled to claim two non-contiguous rural tracts, being used as one farming unit and consisting of less than 160 acres, as her homestead.

This was a lawsuit brought by the children of the deceased against the surviving widow, all of whom were co-tenants, for the partition of the parcel of property which was not immediately adjacent to the parcel on which the widow and several other children continued to reside. The rights of creditors of the deceased were not in dispute. The Court made the following observations:

The trial court based its decision, in holding that the "lower" tract did not constitute a part of the homestead, on the ground that the upper tract alone was worth more than the $3,000 limitation in value allowed for a homestead. But this Court held in the cases of *Moody v. Moody*, 86 Miss. 323, 38 So. 322, and *Dickerson v. Leslie*, 94 Miss. 627, 47 So. 659, 660, that the question of value has no place in the consideration of the rights of the surviving widow to the use and occupancy of the homestead; that the beneficent public policy which the law was designed to establish in this regard must be liberally construed, in order to completely effectuate the legislative purpose; that the value of the homestead is not material in passing on the rights of the surviving widow, since it was never the intention of the Legislature that the "one hundred and sixty acres of land should be reduced in quantity, *save in one instance, and that is where the rights of creditors were involved.*"

In the case of *Dickerson v. Leslie, supra,* the Court declared that: "No higher claim under the law can be propounded that the right of the widow to claim her homestead rights. No statute ever passed has a greater claim upon the court for liberal construction than this." *There are no rights of creditors involved in the instant case, and it seems clear that from the homestead statutes hereinafter discussed and the language above quoted, it was the legislative intent that a rural homesteader should ordinarily be entitled to as much as 160 acres for homestead purposes if such an amount of his land is so located as to be truly susceptible of being*

*devoted to homestead purposes as a unit, and without giving the homestead laws an unreasonable application for the protection of the homesteader in that behalf.* (Emphasis added.)

*Id.* 48 So.2d at p. 852.

Mrs. Osborne has expressed reliance on the case of *Jones v. Jones,* 249 Miss. 322, 161 So.2d 640 (1964) which is factually distinguishable. In *Jones,* the homestead property had descended to the surviving widow and several of the deceased's children. Subsequently, the former wife of one of the children obtained a judgment for the non-payment of child support. The Court offered the following:

> The testimony shows that prior to the death of A.A. Jones, the father of Willis Jones, in 1960, the 26 acres here involved belonged to A.A. Jones and appellee, Mrs. Annie Mae Jones, and that it was their homestead. After the death of Mr. Jones, Mrs. Jones has continued to live on the property, and the property is exempt from her debts, provided of course the 26 acres was valued at less than the exemption allowed by law. See § 317, Miss.Code 1942, Rec. On the other hand, Willis Jones has no homestead exemption in the land, so that if he owned any interest in the property which became subject to the judgment recorded in the chancery clerk's office, such judgment became a lien on his undivided interest in the property. *McCaleb v. Burnett,* 55 Miss. 83; 26 Am.Jur., Homestead, § 173, p. 110.

*Id.* 161 So.2d at p. 642.

After addressing other legal issues which are not pertinent to the instant proceeding, the Court concluded with the following:

> The undivided interest in the exempt property here involved descended to the wife and children of the decedent, A.A. Jones. § 476, Miss.Code 1942, Rec. However, the homestead, exempt under section 317, Miss.Code 1942, Rec., is not subject to partition (as shown by § 478, Miss.Code 1942, Rec.) during the widowhood of Mrs. Annie Mae Jones, provided she remains a widow and qualifies under

the exemption statutes, *supra.* If, on the other hand, the property was of a greater value than $5,000 at the time of the death of decedent, that part over and above the exemption, may be subjected to the debts of the co-owner. In any case, the title to the undivided interest of Willis Jones may be sold to satisfy the judgment of appellant, although the actual property may not be partited during the widowhood of Mrs. Annie Mae Jones without her consent, because of the provisions of section 478, Miss.Code 1942, Rec.

*Id.* 161 So.2d at p. 645.

The primary distinction in *Jones* and the proceeding now before this Court is that the indebtedness was not owed by either the deceased spouse or the surviving spouse, but was incurred by a co-tenant after the death of his father. There was no mention in the opinion as to whether the value of the property exceeded the homestead exemption allowance, only the conclusion that the property could not be partitioned during the widowhood of the surviving spouse without her consent. Considering that the widow was not liable on the debt, this result is reasonable and equitable.

The only other case that the Court would mention is *Stockett v. Stockett, supra,* where the Court, relying on the earlier decisions of *Hendry v. Hendry,* 300 So.2d 147 (Miss.1974) and *Moody v. Moody, supra,* concluded that homestead value is relevant only in considering the claims of creditors. The Court went on to quote a portion of the passage from *Moody,* set forth more fully hereinabove, to the effect that the question of value has no place in the consideration of the rights of the surviving widow to the use and occupancy of the homestead. Again, this Court construes this conclusion in *Stockett* to refer to the rights of the widow against her co-tenants, rather than against creditors of the deceased or her own creditors.

The proceeding before this Court is easily distinguishable from all of the cases cited hereinabove. As mentioned earlier, both the debtors were liable as a result of

Bullins' judgment. As such, Mrs. Osborne is precluded from invoking the protection of § 91–1–23 because she was and is jointly and severally liable on the debt. A contrary result would give Mrs. Osborne more protection than she would otherwise be entitled against her own creditors solely because of her husband's death. This result is not in keeping with the intent or purpose of § 91–1–23.

The motion to avoid the judicial lien held by Bullins is well taken insofar as it impairs the homestead exemption to which Mrs. Osborne is currently entitled in the sum of $30,000.00. The limit of this avoidance, however, is $30,000.00. The judgment lien will remain valid to the extent that the property has value exceeding the homestead exemption plus the amount of any debts that are secured by valid deeds of trust encumbering the property that were recorded prior to the entry of the judgment against the debtors.

### IV.

The remaining issue in this proceeding involves an attempt by Mrs. Osborne to claim a widow's allowance as provided in § 91–7–135 from the real property. This section provides as follows:

§ 91–7–135. Appraisers to set apart one year's support for family.

It shall be the duty of the appraisers to set apart out of the effects of the decedent, for his widow and children who were being supported by him, or for the widow if there be no such children, or for such children if there be no widow, one year's provision, including such provision as may be embraced in the exempt property set apart. If there be no provisions, or an insufficient amount, the appraiser shall allow money in lieu thereof or in addition thereto necessary for the comfortable support of the widow and children, or widow or children, as the case may be, for one year. In addition to the provisions or money in lieu thereof, the appraisers shall ascertain and allow what sum of money will be needed to purchase necessary wearing apparel for the widow and such children, or the widow or children, as the case may be, and to pay tuition for the children for one year. If a mother die leaving children who are infants and were being maintained by her, the same provisions and allowance shall be set apart and made for them as above provided.

■ A widow's allowance can only be awarded from property that is a part of the decedent's probate estate. When an individual files bankruptcy and then dies, the bankruptcy case remains open and viable, particularly a Chapter 7 liquidation bankruptcy such as that filed by the debtors herein. See Rule 1016, Federal Rules of Bankruptcy Procedure. Property that was included within the decedent's bankruptcy estate would not be includible within his probate estate. The decedent's probate estate can only be comprised of property that was claimed and allowed as exempt in the bankruptcy case or that was not property of the bankruptcy estate, e.g., a Chapter 7 debtor's earnings for personal services accumulated post-petition. See 11 U.S.C. § 541(a). This, however, is not relevant to the instant proceeding.

■ As mentioned hereinabove, the debtors owned their real estate as tenants by the entirety with rights of survivorship. At the death of Mr. Osborne, the real property vested exclusively and immediately in the surviving tenant, Mrs. Osborne. As such, the property cannot become an asset of Mr. Osborne's probate estate, and, consequently, is not available to said estate to be distributed in kind as a widow's allowance. This property is now exclusively a part of Mrs. Osborne's bankruptcy estate and must be administered through her bankruptcy case. Mrs. Osborne, of course, is eligible to claim her full statutory homestead exemption in this real property pursuant to § 85–3–21.

### V.

The Court is aware that Cassie Osborne, Jr., has filed a voluntary bankruptcy case in the Eastern District of Kentucky, Frankfort, Kentucky. This bankruptcy case has temporarily stayed the foreclosure of the Bullins' judicial lien which was awarded

against Osborne, Jr., in the original chancery court decree.

Bullins, in his response to the debtors' motion to avoid his judicial lien, requested relief from the automatic stay so that he could continue his efforts to execute upon the subject homestead property. The Court informed Bullins that procedurally this is incorrect in that a separate motion for relief from the automatic stay must be filed. The Court, however, also indicated that it would be extremely reluctant to lift the automatic stay in this case before Bullins had completed the foreclosure of his judicial lien against the property which originally was to be sold to Cassie Osborne, Jr. This Court is of the opinion that it is extremely important that Bullins mitigate his damages before taking any further action against the homestead property which has now vested exclusively in Mrs. Osborne.

## VI.

In conclusion, the Court would summarize the findings of this Opinion as follows:

1. The provisions of § 91–1–23 cannot be utilized by the surviving debtor, Mrs. Doris Osborne, to preclude Bullins from enforcing the judgment of the Mississippi Supreme Court against the real property now vested in Mrs. Osborne, subject, however, to the protection provided by § 85–3–21, the homestead exemption statute.

2. At the death of Cassie Osborne, Sr., the real property which had been owned by him and his wife as tenants by the entirety with rights of survivorship became vested in Mrs. Osborne as the surviving spouse. As such, this property cannot become an asset of Mr. Osborne's probate estate and is not available for distribution in kind as a widow's allowance to Mrs. Osborne. This real property is exclusively an asset of Mrs. Osborne's bankruptcy estate, again subject to the protection provided by § 85–3–21.

3. The motion to avoid the judicial lien filed on behalf of the debtors is well taken to the extent that said lien impairs Mrs. Osborne's homestead exemption in the sum

of $30,000.00. The value of the real property, however, which exceeds the $30,000.00 exemption plus the value of any deeds of trust which prime Bullins' judgment, is not exempt and, as such, is not impaired by the Bullins' lien. Therefore, the motion to avoid the judicial lien is not well taken as to any excess non-exempt unencumbered value in the real property.

4. The request to lift the automatic stay which was pled in Bullins' response to the motion to avoid his judicial lien is not well taken and will be overruled without prejudice.