# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-00552-SCT

*GEORGE H. CRADDOCK, SR.*

*v.*

*WILLIAM J. BRINKLEY, III*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/91 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS, JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | HAROLD S. JACKSON |
| ATTORNEY FOR APPELLEE: | DONALD RAY DOWNS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 3/28/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/18/96 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. George H. Craddock, Sr. filed a complaint in the Chancery Court of Tishomingo County on July 3, 1989 against William J. Brinkley, III [hereinafter Brinkley] asking the court to order reformation of a scrivenor's error in a legal description of property in a deed of trust given to Craddock by the defendant's father, W. J. Brinkley [hereinafter W.J.], on December 2, 1974. Brinkley replied that the subject property was homestead property, and requested the court to set aside the November 30, 1981 foreclosure of the property for failure of his mother, Flora Lee Brinkley, to sign the deed of trust. Because the chancellor was correct in declaring the conveyance void due to Flora Lee's failure to sign the deed of trust, we affirm the October 30, 1991 decree of the chancery court canceling all clouds on the title in favor of Brinkley who received his interest in the property through descent and distribution.

I.

¶2. The facts revealed that Craddock made a series of loans to his brother-in-law, W.J. Brinkley, in the early 1970's for the purpose of developing property in Iuka, Mississippi. W.J. gave a deed of trust to Craddock on December 2, 1974 on property he referred to as the "Pinecrest Property" as security for the loans which amounted to $20,000 at that time. Tax receipts indicated that the size of the parcel was approximately 45 acres. Craddock testified that W.J. planned to develop the property into a residential subdivision called Pinecrest. The legal description in the 1974 deed of trust stated that the property ran

"south parallel with range line 107-2/3 rods." A prior deed of trust from W.J. to Craddock securing another loan gave the same description. However, the legal description of the property in the original warranty deed which W.J. received when he purchased the property in 1960 indicated that the property ran "south parallel with range line 170-2/3 rods."

¶3. Craddock continued to advance W.J. money. This was evidenced by a $36,500 promissory note given to Craddock by W.J. which was signed by W.J. and his wife, Flora Lee, on September 1, 1975. The promissory note indicated that it was also secured by the deed of trust W.J. had executed and given to Craddock on December 2, 1974.

¶4. Craddock assigned the indebtedness to the Banco Continental de Panama [hereinafter Bank of Panama] on July 29, 1981 in order to enhance his line of credit with the bank. After the Bank of Panama failed to receive payment on the debt, they appointed a substitute trustee and foreclosed on the property receiving a substitute trustee's deed on November 30, 1981.

¶5. The Bank of Panama then conveyed the property by way of warranty deed back to Craddock on January 1, 1981. The property has been in Craddock's possession ever since. The legal description of the property in all documents following the 1974 deed of trust have continued to provide that the property runs "south parallel with range line 107-2/3 rods."

¶6. Craddock kept the property bush-hogged and paid the property taxes every year after gaining possession of the land. He cut some of the timber on the property in 1985. Brinkley objected some two years later, but maintained that he did so as soon as he learned that the timber had been cut. The property was eventually surveyed and found to be too small to contain the Pinecrest subdivision W.J. had proposed. However, it was possible to plat the description provided in the deed of trust.

¶7. Craddock initiated a suit to have the instrument reformed to reflect the entire Pinecrest property. Nothing in the deed of trust, however, indicated that the land securing the loan was called Pinecrest. Craddock testified that all of the instruments beginning with the 1974 deed of trust should have read "170-2/3 rods" instead of "107-2/3 rods."

¶8. Brinkley maintained that when his father, W.J., gave a deed of trust to Craddock on the property in issue, the property constituted part of the 145 contiguous acre homestead of his father and mother. The 1974-75 homestead declarations for his parents showed that the subject property was part of their homestead. Brinkley obtained his interest in this land by descent and distribution. W.J. died intestate on September 13, 1978 leaving as heirs in law his wife, Flora Lee, and two sons, one of which is Brinkley. Brinkley's brother conveyed his interest in the property to his mother, Flora Lee, on January 3, 1980. By instruments dated August 12, 1988 and August 1, 1989, Flora Lee conveyed all of her interest in the subject property to Brinkley.

## II.

¶9. Through the use of parol evidence, the chancellor concluded that there was an error in the 1974 deed of trust, and that it should have been reformed to read, "south parallel with range line 170-2/3 rods," had it been a valid document. However, the December 2, 1974 deed was declared null and void, and all subsequent documents incident to the foreclosure were set aside because Flora Lee Brinkley failed to execute the deed of trust on the property which constituted the homestead of W.J. and Flora Lee Brinkley.

¶10. Miss. Code Ann § 89-1-29 (1991) provides that a deed of trust is invalid and not binding "unless signed by the spouse of the owner if the owner be married and living with the spouse." The validity of the deed of trust is judged by the circumstances existing at the time of its execution. *Hughes v. Hahn*, 209 Miss. 293, 46 So. 2d 587 (1951). Subsequent actions by the spouse who failed to join in the execution cannot cure the invalidity of the instrument. *Welborn v. Lowe*, 504 So. 2d 205, 206 (Miss. 1987).

¶11. Craddock recognizes that Flora Lee failed to sign the deed of trust. He maintains, however, that her signature on a promissory note evidencing an indebtedness was sufficient to validate the deed of trust. The promissory note which was signed by Flora Lee and W.J. on September 1, 1975, provides the following with respect to the 1974 deed of trust: "This note secured by Deed of Trust on real property dated December 2, 1974, and recorded in Book 73, page 525."

¶12. The facts demonstrate that this promissory note was executed nearly one year after W.J. gave Craddock the deed of trust. Flora Lee's subsequent act of signing the promissory note cannot operate to cure the original deed of trust's invalidity. Nor was the note an attachment to, or an integral part of the 1974 deed of trust as the note was signed nearly one year later. *See United Miss. Bank v. GMAC Mortgage Co.*, 615 So. 2d 1174, 1176 (Miss. 1993) (finding deed of trust for homestead property was valid without wife's signature on deed of trust because her signature appeared on two other attachments which were an integral part of deed). A promissory note and a deed of trust are two separate and distinct instruments. The spouse has never signed the deed of trust. Consequently, the absence of Flora Lee's signature on the original deed of trust is not cured by her signature on the promissory note.

¶13. Craddock also contends that the property in issue does not qualify as homestead property in the first place. Craddock specifically contends that the property in issue cannot be considered part of the homestead because it was neither contiguous nor within one mile of the parcel of property containing the residence of W.J. Brinkley, and because W.J. intended to develop a subdivision on the property.

¶14. Craddock's assertion in his brief that the property was not contiguous is not supported by evidence at trial. The chancellor's decision on this issue will not be overturned unless manifestly erroneous. *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So. 2d 357, 360 (Miss. 1992). As pointed out by Craddock, however, there is evidence that W.J. did consider at one time the possibility of developing the property into a subdivision. He argues that this fact should defeat the classification of the land as homestead property.

¶15. The test for determining whether land qualifies as part of the homestead is whether it is being used for homestead purposes. *Tanner v. Tanner*, 111 Miss. 460, 467, 71 So. 749, 750 (1916). Other than the fact that W.J. Brinkley was considering the possibility of developing a subdivision on the property in dispute, there is no evidence that this property was being used for something other than homestead purposes. Further, there is no indication that his spouse, Flora Lee, was considering this property as anything other than her homestead. Craddock merely contends that the property was being considered for commercial purposes at the time the deed of trust was executed. This fact in itself does not disqualify the property as the Brinkley's homestead. Since Craddock does not actually contend that the property was in fact used for commercial purposes, we find that the property in issue qualified as homestead property.

¶16. Flora Lee Brinkley failed to sign the deed of trust given to Craddock in 1974. Her failure to sign the 1974 deed of trust makes the instrument null and void as a matter of law. This issue is dispositive of this case. Since this was the instrument used as the basis for foreclosure on the property, the chancellor appropriately set aside the foreclosure and determined that title should vest in Brinkley who received his

interest in the property via the laws of descent and distribution.

**¶17. JUDGMENT IS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, SMITH AND MILLS, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.**